**MIDWEST TERMINALS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. C91–0013–P(J).**

United States District Court,
W.D. Kentucky,
Paducah Division.

Aug. 18, 1992.

R. Kent Westberry, Landrum & Shouse, Louisville, KY, B.M. Westberry, Paducah, KY, for plaintiff.

Michael F. Spalding, James H. Barr, III, Asst. U.S. Attys. U.S. Attys. Office, Louisville, KY, Charles H. Keen, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, DC, for defendant.

**MEMORANDUM OPINION**

JOHNSTONE, District Judge.

The plaintiff Midwest Terminals, Inc. (Midwest) seeks to recover penalties it paid to the IRS pursuant to 26 U.S.C. §§ 4041(a)

and 6656 for failure to make timely deposits of excise taxes on diesel fuel. The matter is now before the court on cross-motions for summary judgment. For the reasons stated herein, the court grants summary judgment in favor of the defendant.

The pertinent facts, presented in a light most favorable to Midwest, are as follows: Immediately after its formation in 1986, Midwest hired Tammy Brooks, an experienced bookkeeper. Midwest trained her to calculate excise taxes and instructed her to make timely deposits of those taxes. She was supervised for approximately one year, with concentrated supervision and training for the first six or seven months. When Brooks was no longer under direct supervision she began to miss deposit deadlines. The IRS assessed penalties against Midwest. One penalty of approximately $3,000 came to the attention of Brook's supervisor, Yvonne Holsapple. Holsapple cannot remember how she learned of this penalty. Holsapple then had a "very, very hard talk" with Brooks about the importance of making timely deposits.

Brooks continued to miss deposit deadlines. She paid the IRS penalties but posted them to a truck freight expense account to conceal them from Midwest. When she received a penalty notice in October of 1988 for $58,107.40 for the tax quarter ending June 30, 1988, she brought all the notices to the attention of Midwest for the first time. By then Midwest had incurred an additional penalty of approximately $34,000 for the tax quarter ending September 30, 1988. Midwest contacted the IRS, which abated the penalty for the quarter ending June 30, 1988. However, the IRS later notified Midwest that the penalty for the quarter ending September 30, 1988 had been assessed. Midwest paid that penalty and now seeks its return along with interest and costs.

Midwest contends that the penalty was improperly imposed because its failure to make timely deposits was due to "reasonable cause", which excuses the penalty under the language of 26 U.S.C. § 6656. "Reasonable cause" is not defined in § 6656 or in the regulations interpreting the statute. It is defined, however, in the regulations issued under 26 U.S.C. § 6651(a), a provision in the same subchapter that imposes penalties for failure to file tax returns without "reasonable cause." Those regulations provide in pertinent part: "If the taxpayer exercised ordinary business and prudence and was nevertheless *unable* to file the return within the prescribed time, then the delay is due to a reasonable cause." 26 C.F.R. § 301.6651–1(c) (emphasis added).

The Supreme Court has held that, as a matter of law, the taxpayer's reliance on an agent or employee is not "reasonable cause" for a late filing under § 6651(a)(1). *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The Court recognized the regulatory exemptions from penalties for late filings resulting from factors beyond the taxpayer's control. The Court distinguished that type of situation, which involves a taxpayer's *disability,* from one that involves a taxpayer's *reliance* on an agent employed by the taxpayer. *Id.* at 248, Note 6, 105 S.Ct. at 691, Note 6. In holding that a taxpayer's reliance on his attorney's assurances did not excuse the late filing of his estate tax return, the Court explained: "Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." *Id.* at 249–50, 105 S.Ct. at 692.

The necessity of the *Boyle* rule is particularly apparent in the corporate context, because a corporation can act only through its agents and employees. If reliance on an employee were held to constitute "reasonable cause", a corporation would be immune from penalties for late deposits.

A Colorado District Court held, in a pre-*Boyle* opinion, that penalties incurred by a small corporation pursuant to § 6656 were not excused by its office manager's neglect. *Obstetrical and Gynecological Group, P.A. v. United States,* 79–2 U.S.T.C. P 9511 (D.Col.), 1979 WL 1419. The court stated:

9. The absence of reasonable cause for delay and the existence of wilful neglect on behalf of Ms. Faber, an employee of plaintiff corporation, may be imputed to plain-

tiff corporation to establish its absence of reasonable cause and the existence of wilful neglect. Plaintiff corporation cannot avoid liability for assessed tax penalties by delegating the ministerial responsibility of complying with known federal employment tax obligations to an unsupervised employee.

10. Plaintiff corporation's failure to establish any form of procedure to review Ms. Faber's compliance with federal employment tax obligations demonstrated a lack of ordinary business care and prudence....

*Id.* at 87,839.

Midwest argues that, unlike the office manager in *Obstetrical,* Brooks was supervised, and her neglect would have been discovered if she had not actively concealed penalty assessments. If those assertions were true, they would establish circumstances beyond Midwest's control and would therefore constitute "reasonable cause" even under the *Boyle* rationale. *Universal Concrete Products, Corp. v. United States,* 1990 WL 106584 (E.D.Pa.1990), 90–2 U.S.T.C. P 50,440. The record does not support those assertions.

In its memorandum in response to the United States' motion for summary judgment, Midwest states that Brooks was told to report to Holsapple on a regular basis and keep the company informed of any mistakes. Midwest cites pages 30–32 of the Holsapple deposition as authority for that statement of fact. No basis for Midwest's statement appears on those pages, elsewhere in the deposition, or anywhere in the record. The record shows that Brooks was closely supervised during her first year of employment. After that she was unsupervised, at least with regard to the calculation and deposit of excise taxes. It was during this unsupervised period that she began to miss deposit deadlines and conceal penalty assessments.

In *Universal Concrete,* the court granted summary judgment for the IRS on the plaintiff's claim for return of penalties caused by its controller's neglect and deceipt in regard to tax deposits. The court explained: "While these duties were assigned to him as early as 1984 and initially monitored by Mrs. Faust,

since 1984 the duties has [sic] been fully under the care and control of [the controller]. *Id.* at 3. The court concluded that the controller was not adequately supervised when the deposit deadlines were violated. The circumstances in this case are similar: Although Brooks was initially well-trained and her actions monitored by Midwest, the company ultimately relied on her to make timely deposits. While that reliance may have been practical, it does not constitute "reasonable cause" under *Boyle.*

Regardless of how closely it supervised Brooks, Midwest should have been aware that the deposit deadlines were violated. Midwest has submitted evidence that detection of penalties was not reasonably possible through accounting procedures once Brooks had posted them to truck freight expense accounts. It has not explained, however, why detection of penalty notices received from the IRS by mail was not possible. There is no evidence in the record that Brooks actively concealed the notices. In any event, adequate supervision or other internal controls would have prevented her from doing so. "Even rudimentary procedures, such as requiring that deposit receipts be attached to the taxpayer copy of the return, would have prevented the controller from practicing deception." *Universal Concrete* at 3. The need for monitoring procedures should have been especially apparent to Midwest after the first penalty was brought to Holsapple's attention.

No reasonable jury could find from the evidence in the record that Midwest's failure to meet the deposit deadlines was due to factors beyond its control. The United States' motion for summary judgment is granted.