UNITED STATES *v.* BOYLE, EXECUTOR OF THE
ESTATE OF BOYLE

No. 83–1266. Argued October 10, 1984—Decided January 9, 1985

BURGER, C. J., delivered the opinion for a unanimous Court. BRENNAN, J., filed a concurring opinion, in which MARSHALL, POWELL, and O'CONNOR, JJ., joined, *post*, p. 252.

*Albert G. Lauber, Jr.*, argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Archer, Carleton D. Powell*, and *Jo-Ann Horn.*

*Thomas E. Davies* argued the cause and filed a brief for respondent.

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to resolve a conflict among the Circuits on whether a taxpayer's reliance on an attorney to prepare and file a tax return constitutes "reasonable cause" under § 6651(a)(1) of the Internal Revenue Code, so as to defeat a statutory penalty incurred because of a late filing.

I

A

Respondent, Robert W. Boyle, was appointed executor of the will of his mother, Myra Boyle, who died on September 14, 1978; respondent retained Ronald Keyser to serve as attorney for the estate. Keyser informed respondent that the estate must file a federal estate tax return, but he did not mention the deadline for filing this return. Under 26 U. S. C. § 6075(a), the return was due within nine months of the decedent's death, *i. e.*, not later than June 14, 1979.

Although a businessman, respondent was not experienced in the field of federal estate taxation, other than having been executor of his father's will 20 years earlier. It is undisputed that he relied on Keyser for instruction and guidance. He cooperated fully with his attorney and provided Keyser with all relevant information and records. Respondent and his wife contacted Keyser a number of times during the spring and summer of 1979 to inquire about the progress of

the proceedings and the preparation of the tax return; they were assured that they would be notified when the return was due and that the return would be filed "in plenty of time." App. 39. When respondent called Keyser on September 6, 1979, he learned for the first time that the return was by then overdue. Apparently, Keyser had overlooked the matter because of a clerical oversight in omitting the filing date from Keyser's master calendar. Respondent met with Keyser on September 11, and the return was filed on September 13, three months late.

## B

Acting pursuant to 26 U. S. C. § 6651(a)(1), the Internal Revenue Service assessed against the estate an additional tax of $17,124.45 as a penalty for the late filing, with $1,326.56 in interest. Section 6651(a)(1) reads in pertinent part:

> "In case of failure . . . to file any return . . . on the date prescribed therefor . . . , *unless it is shown that such failure is due to reasonable cause and not due to willful neglect*, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . ." (Emphasis added.)

A Treasury Regulation provides that, to demonstrate "reasonable cause," a taxpayer filing a late return must show that he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 CFR § 301.6651–1(c)(1) (1984).[1]

---

[1] The Internal Revenue Service has articulated eight reasons for a late filing that it considers to constitute "reasonable cause." These reasons include unavoidable postal delays, the taxpayer's timely filing of a return

Respondent paid the penalty and filed a claim for a refund. He conceded that the assessment for interest was proper, but contended that the penalty was unjustified because his failure to file the return on time was "due to reasonable cause," *i. e.,* reliance on his attorney. Respondent brought suit in the United States District Court, which concluded that the claim was controlled by the Court of Appeals' holding in *Rohrabaugh* v. *United States,* 611 F. 2d 211 (CA7 1979). In *Rohrabaugh,* the United States Court of Appeals for the Seventh Circuit held that reliance upon counsel constitutes "reasonable cause" under § 6651(a)(1) when: (1) the taxpayer is unfamiliar with the tax law; (2) the taxpayer makes full disclosure of all relevant facts to the attorney that he relies upon, and maintains contact with the attorney from time to time during the administration of the estate; and (3) the taxpayer has otherwise exercised ordinary business care and prudence. 611 F. 2d, at 215, 219. The District Court held that, under *Rohrabaugh,* respondent had established "reasonable cause" for the late filing of his tax return; accordingly, it granted summary judgment for respondent and ordered refund of the penalty. A divided panel of the Seventh Circuit, with three opinions, affirmed. 710 F. 2d 1251 (1983).

---

with the wrong IRS office, the taxpayer's reliance on the erroneous advice of an IRS officer or employee, the death or serious illness of the taxpayer or a member of his immediate family, the taxpayer's unavoidable absence, destruction by casualty of the taxpayer's records or place of business, failure of the IRS to furnish the taxpayer with the necessary forms in a timely fashion, and the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in the preparation of a return. Internal Revenue Manual (CCH) § 4350, (24) ¶ 22.2(2) (Mar. 20, 1980) (Audit Technique Manual for Estate Tax Examiners). If the cause asserted by the taxpayer does not implicate any of these eight reasons, the district director determines whether the asserted cause is reasonable. "A cause for delinquency which appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return and which clearly negatives willful neglect will be accepted as reasonable." *Id.,* ¶ 22.2(3).

We granted certiorari, 466 U. S. 903 (1984), and we reverse.

## II

### A

Congress' purpose in the prescribed civil penalty was to ensure timely filing of tax returns to the end that tax liability will be ascertained and paid promptly. The relevant statutory deadline provision is clear; it mandates that all federal estate tax returns be filed within nine months from the decedent's death, 26 U. S. C. 6075(a).[2] Failure to comply incurs a penalty of 5 percent of the ultimately determined tax for each month the return is late, with a maximum of 25 percent of the base tax. To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from "willful neglect," and (2) that the failure was "due to reasonable cause." 26 U. S. C. § 6651(a)(1).

The meaning of these two standards has become clear over the near-70 years of their presence in the statutes.[3] As used here, the term "willful neglect" may be read as meaning a conscious, intentional failure or reckless indifference. See

---

[2] Section 6081(a) of the Internal Revenue Code authorizes the IRS to grant "a reasonable extension of time," generally no longer than six months, for filing any return.

[3] Congress added the relevant language to the tax statutes in 1916. For many years before that, § 3176 mandated a 50 percent penalty "in case of a *refusal* or *neglect*, except in cases of sickness or absence, to make a list or return, or to verify the same . . . ." Rev. Stat. § 3176 (emphasis added). The Revenue Act of 1916 amended this provision to require the 50 percent penalty for failure to file a return within the prescribed time, "except that, when a return is voluntarily and without notice from the collector filed after such time and it is shown that the failure to file it was *due to a reasonable cause and not due to willful neglect,* no such addition shall be made to the tax." Revenue Act of 1916, ch. 463, § 16, 39 Stat. 756, 775 (emphasis added). No committee reports or congressional hearings or debates discuss the change in language. It would be logical to assume that Congress intended "willful neglect" to replace "refusal"—both expressions implying intentional failure—and "[absence of] reasonable cause" to replace "neglect"—both expressions implying carelessness.

*Orient Investment & Finance Co.* v. *Commissioner,* 83 U. S. App. D. C. 74, 75, 166 F. 2d 601, 602 (1948); *Hatfried, Inc.* v. *Commissioner,* 162 F. 2d 628, 634 (CA3 1947); *Janice Leather Imports Ltd.* v. *United States,* 391 F.' Supp. 1235, 1237 (SDNY 1974); *Gemological Institute of America, Inc.* v. *Riddell,* 149 F. Supp. 128, 131–132 (SD Cal. 1957). Like "willful neglect," the term "reasonable cause" is not defined in the Code, but the relevant Treasury Regulation calls on the taxpayer to demonstrate that he exercised "ordinary business care and prudence" but nevertheless was "unable to file the return within the prescribed time."[4] 26 CFR § 301.6651(c)(1)(1984); accord, *e. g., Fleming* v. *United States,* 648 F. 2d 1122, 1124 (CA7 1981); *Ferrando* v. *United States,* 245 F. 2d 582, 587 (CA9 1957); *Haywood Lumber & Mining Co.* v. *Commissioner,* 178 F. 2d 769, 770 (CA2 1950); *Southeastern Finance Co.* v. *Commissioner,* 153 F. 2d 205 (CA5 1946); *Girard Investment Co.* v. *Commissioner,* 122 F. 2d 843, 848 (CA3 1941); see also n. 1, *supra.* The Commissioner does not contend that respondent's failure to file the estate tax return on time was willful or reckless. The question to be resolved is whether, under the statute,

---

[4] Respondent contends that the statute must be construed to apply a standard of willfulness only, and that the Treasury Regulation is incompatible with this construction of the statute. He argues that the Regulation converts the statute into a test of "ordinary business care," because a taxpayer who demonstrates ordinary business care can never be guilty of "willful neglect." By construing "reasonable cause" as the equivalent of "ordinary business care," respondent urges, the IRS has removed from consideration any question of willfulness.

We cannot accept this reasoning. Congress obviously intended to make absence of fault a prerequisite to avoidance of the late-filing penalty. See n. 3, *supra.* A taxpayer seeking a refund must therefore prove that his failure to file on time was the result neither of carelessness, reckless indifference, nor intentional failure. Thus, the Service's correlation of "reasonable cause" with "ordinary business care and prudence" is consistent with Congress' intent, and over 40 years of case law as well. That interpretation merits deference. See, *e. g., Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U. S. 837, 844, and n. 14 (1984).

reliance on an attorney in the instant circumstances is a "reasonable cause" for failure to meet the deadline.

B

In affirming the District Court, the Court of Appeals recognized the difficulties presented by its formulation but concluded that it was bound by *Rohrabaugh* v. *United States,* 611 F. 2d 211 (CA7 1979). The Court of Appeals placed great importance on the fact that respondent engaged the services of an experienced attorney specializing in probate matters and that he duly inquired from time to time as to the progress of the proceedings. As in *Rohrabaugh,* see *id.,* at 219, the Court of Appeals in this case emphasized that its holding was narrowly drawn and closely tailored to the facts before it. The court stressed that the question of "reasonable cause" was an issue to be determined on a case-by-case basis. See 710 F. 2d, at 1253–1254; *id.,* at 1254 (Coffey, J., concurring).

Other Courts of Appeals have dealt with the issue of "reasonable cause" for a late filing and reached contrary conclusions.[5] In *Ferrando* v. *United States,* 245 F. 2d 582 (CA9 1957), the court held that taxpayers have a personal and nondelegable duty to file a return on time, and that reliance on an attorney to fulfill this obligation does not constitute "reasonable cause" for a tardy filing. *Id.,* at 589. The Fifth Circuit has similarly held that the responsibility for ensuring a timely filing is the taxpayer's alone, and that the taxpayer's reliance on his tax advisers—accountants or

---

[5] Although at one point the Court of Appeals for the Sixth Circuit held that reliance on counsel could constitute reasonable cause, see *In re Fisk's Estate,* 203 F. 2d 358, 360 (1953), the Sixth Circuit appears now to be following those courts that have held that the taxpayer has a nondelegable duty to ascertain the deadline for a return and ensure that the return is filed by that deadline. See *Estate of Geraci* v. *Commissioner,* 32 TCM 424, 425 (1973), aff'd, 502 F. 2d 1148 (CA6 1974), cert. denied, 420 U. S. 992 (1975); *Estate of Duttenhofer* v. *Commissioner,* 49 T. C. 200, 205 (1967), aff'd, 410 F. 2d 302 (CA6 1969) *(per curiam).*

attorneys—is not a "reasonable cause." *Millette & Associates* v. *Commissioner*, 594 F. 2d 121, 124–125 *(per curiam)*, cert. denied, 444 U. S. 899 (1979); *Logan Lumber Co.* v. *Commissioner*, 365 F. 2d 846, 854 (1966). The Eighth Circuit also has concluded that reliance on counsel does not constitute "reasonable cause." *Smith* v. *United States*, 702 F. 2d 741, 743 (1983) *(per curiam); Boeving* v. *United States*, 650 F. 2d 493, 495 (1981); *Estate of Lillehei* v. *Commissioner*, 638 F. 2d 65, 66 (1981) *(per curiam)*.

## III

We need not dwell on the similarities or differences in the facts presented by the conflicting holdings. The time has come for a rule with as "bright" a line as can be drawn consistent with the statute and implementing regulations.[6]

---

[6] The administrative regulations and practices exempt late filings from the penalty when the tardiness results from postal delays, illness, and other factors largely beyond the taxpayer's control. See *supra*, at 243, and n. 1. The principle underlying the IRS regulations and practices— that a taxpayer should not be penalized for circumstances beyond his control—already recognizes a range of exceptions which there is no reason for us to pass on today. This principle might well cover a filing default by a taxpayer who relied on an attorney or accountant because the taxpayer was, for some reason, incapable by objective standards of meeting the criteria of "ordinary business care and prudence." In that situation, however, the disability alone could well be an acceptable excuse for a late filing.

But this case does not involve the effect of a taxpayer's *disability;* it involves the effect of a taxpayer's *reliance* on an agent employed by the taxpayer, and our holding necessarily is limited to that issue rather than the wide range of issues that might arise in future cases under the statute and regulations. Those potential future cases are purely hypothetical at the moment and simply have no bearing on the issue now before us. The concurring opinion seems to agree in part. After four pages of discussion, it concludes:

"Because the respondent here was fully capable of meeting the required standard of ordinary business care and prudence, we need not decide the issue of whether and under what circumstances a taxpayer who presents

Deadlines are inherently arbitrary; fixed dates, however, are often essential to accomplish necessary results. The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates.[7] Prompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary ad hoc determinations.[8]

Congress has placed the burden of prompt filing on the executor, not on some agent or employee of the executor. The duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of

evidence that he was *unable* to adhere to the required standard might be entitled to relief from the penalty." *Post,* at 255.

This conclusion is unquestionably correct. See also, *e. g., Reed* v. *Ross,* 468 U. S. 1, 8, n. 5 (1984); *Heckler* v. *Day,* 467 U. S. 104, 119, nn. 33 and 34 (1984); *Kosak* v. *United States,* 465 U. S. 848, 853, n. 8 (1984); *Bell* v. *New Jersey,* 461 U. S. 773, 779, n. 4 (1983).

[7] Many systems that do not collect taxes on a self-assessment basis have experienced difficulties in administering tax collection. See J. Wagner, France's Soak-the-Rich Tax, Congressional Quarterly (Editorial Research Reports), Oct. 12, 1982; Dodging Taxes in the Old World, Time, Mar. 28, 1983, p. 32.

[8] A number of courts have indicated that "reasonable cause" is a question of fact, to be determined only from the particular situation presented in each particular case. See, *e. g., Estate of Mayer* v. *Commissioner,* 351 F. 2d 617 (CA2 1965) *(per curiam),* cert. denied, 383 U. S. 935 (1966); *Coates* v. *Commissioner,* 234 F. 2d 459, 462 (CA8 1956). This view is not entirely correct. Whether the elements that constitute "reasonable cause" are *present* in a given situation is a question of fact, but what elements *must* be present to constitute "reasonable cause" is a question of law. See, *e. g., Haywood Lumber & Mining Co.* v. *Commissioner,* 178 F. 2d 769, 772 (CA2 1950); *Daley* v. *United States,* 480 F. Supp. 808, 811 (ND 1979). When faced with a recurring situation, such as that presented by the instant case, the courts of appeals should not be reluctant to formulate a clear rule of law to deal with that situation.

250

situations. Engaging an attorney to assist in the probate proceedings is plainly an exercise of the "ordinary business care and prudence" prescribed by the regulations, 26 CFR § 301.6651–1(c)(1) (1984), but that does not provide an answer to the question we face here. To say that it was "reasonable" for the executor to *assume* that the attorney would comply with the statute may resolve the matter as between them, but not with respect to the executor's obligations under the statute. Congress has charged the executor with an unambiguous, precisely defined duty to file the return within nine months; extensions are granted fairly routinely. That the attorney, as the executor's agent, was expected to attend to the matter does not relieve the principal of his duty to comply with the statute.

This case is not one in which a taxpayer has relied on the erroneous advice of counsel concerning a question of law. Courts have frequently held that "reasonable cause" is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken. See, *e. g.*, *United States* v. *Kroll*, 547 F. 2d 393, 395–396 (CA7 1977); *Commissioner* v. *American Assn. of Engineers Employment, Inc.*, 204 F. 2d 19, 21 (CA7 1953); *Burton Swartz Land Corp.* v. *Commissioner*, 198 F. 2d 558, 560 (CA5 1952); *Haywood Lumber & Mining Co.* v. *Commissioner*, 178 F. 2d, at 771; *Orient Investment & Finance Co.* v. *Commissioner*, 83 U. S. App. D. C., at 75, 166 F. 2d, at 603; *Hatfried, Inc.* v. *Commissioner*, 162 F. 2d, at 633–635; *Girard Investment Co.* v. *Commissioner*, 122 F. 2d, at 848; *Dayton Bronze Bearing Co.* v. *Gilligan*, 281 F. 709, 712 (CA6 1922). This Court also has implied that, in such a situation, reliance on the opinion of a tax adviser may constitute reasonable cause for failure to file a return. See *Commissioner* v. *Lane-Wells Co.*, 321 U. S. 219 (1944) (remanding for determination whether failure to file return was due to

reasonable cause, when taxpayer was advised that filing was not required).[9]

When an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. See *Haywood Lumber, supra,* at 771. "Ordinary business care and prudence" do not demand such actions.

By contrast, one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. Among the first duties of the representative of a decedent's estate is to identify and assemble the assets of the decedent and to ascertain tax obligations. Although it is common practice for an executor to engage a professional to prepare and file

---

[9] Courts have differed over whether a taxpayer demonstrates "reasonable cause" when, in reliance on the advice of his accountant or attorney, the taxpayer files a return after the actual due date but within the time the adviser erroneously told him was available. Compare *Sanderling, Inc.* v. *Commissioner,* 571 F. 2d 174, 178–179 (CA3 1978) (finding "reasonable cause" in such a situation); *Estate of Rapelje* v. *Commissioner,* 73 T. C. 82, 90, n. 9 (1979) (same); *Estate of DiPalma* v. *Commissioner,* 71 T. C. 324, 327 (1978) (same), acq., 1979–1 Cum. Bull. 1; *Estate of Bradley* v. *Commissioner,* 33 TCM 70, 72–73 (1974) (same), aff'd, 511 F. 2d 527 (CA6 1975), with *Estate of Kerber* v. *United States,* 717 F. 2d 454, 454–455, and n. 1 (CA8 1983) *(per curiam)* (no "reasonable cause"), cert. pending, No. 83–1038; *Smith* v. *United States,* 702 F. 2d 741, 742 (CA8 1983) (same); *Sarto* v. *United States,* 563 F. Supp. 476, 478 (ND Cal. 1983) (same). We need not and do not address ourselves to this issue.

an estate tax return, a person experienced in business matters can perform that task personally. It is not unknown for an executor to prepare tax returns, take inventories, and carry out other significant steps in the probate of an estate. It is even not uncommon for an executor to conduct probate proceedings without counsel.

It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1). The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL, JUSTICE POWELL, and JUSTICE O'CONNOR join, concurring.

I concur that the judgment must be reversed. Although the standard of taxpayer liability found in 26 U. S. C. § 6651(a)(1) might plausibly be characterized as ambiguous,[1] courts and the Internal Revenue Service have for almost 70 years interpreted the statute as imposing a standard of "ordinary business care and prudence." *Ante,* at 245–246. I agree with the Court that we should defer to this longstanding construction. *Ante,* at 246, n. 4. I also agree that taxpayers in the exercise of ordinary business care and prudence must ascertain relevant filing deadlines and ensure that those deadlines are met. As the Court correctly holds, a taxpayer cannot avoid the reach of § 6651(a)(1) merely

---

[1] For each month or fraction of a month that a tax return is overdue, 26 U. S. C. § 6651(a)(1) provides for a mandatory penalty of 5% of the tax (up to a maximum of 25%) "unless it is shown that [the failure to file on time] is due to reasonable cause and not due to willful neglect." As Judge Posner observed in his dissent below, "in making 'willful neglect' the opposite of 'reasonable cause' the statute might seem to have modified the ordinary meaning of 'reasonable' . . . ." 710 F. 2d 1251, 1256 (CA7 1983).

by delegating this duty to an attorney, accountant, or other individual. *Ante,* at 250, 252.[2]

I write separately, however, to underscore the importance of an issue that the Court expressly leaves open. Specifically, I believe there is a substantial argument that the "ordinary business care and prudence" standard is applicable only to the "ordinary person"—namely, one who is physically and mentally capable of knowing, remembering, and complying with a filing deadline. In the instant case, there is no question that the respondent not only failed to exercise ordinary business care in monitoring the progress of his mother's estate, but also made no showing that he was *unable* to exercise the usual care and diligence required of an executor. The outcome could be different if a taxpayer were able to demonstrate that, for reasons of incompetence or infirmity, he understandably was unable to meet the standard of ordinary business care and prudence. In such circumstances, there might well be no good reason for imposing the harsh penalty of § 6651(a)(1) over and above the prescribed statutory interest penalty. See 26 U. S. C. §§ 6601(a), 6621(b).

The Court proclaims the need "for a rule with as 'bright' a line as can be drawn," and it stresses that the Government "should not have to assume the burden of unnecessary ad hoc determinations." *Ante,* at 248, 249. On the other hand, it notes that the "bright line" might not cover a taxpayer who is "incapable by objective standards of meeting the criteria of 'ordinary business care and prudence,'" reasoning that "the disability alone could well be an acceptable excuse for a late filing." *Ante,* at 248, n. 6.

I share the Court's reservations about the sweep of its "bright line" rule. If the Government were determined to

---

[2] As the Court emphasizes, this principle of nondelegation does not extend to situations in which a taxpayer reasonably relies on expert advice concerning substantive questions of tax law, such as whether a liability exists in the first instance. *Ante,* at 250–251.

draw a "bright line" and to avoid the "burden" of "ad hoc determinations," it would not provide for *any* exemptions from the penalty provision. Congress has emphasized, however, that exemptions *must* be made where a taxpayer demonstrates "reasonable cause." 26 U. S. C. § 6651(a)(1). Accordingly, the IRS already allows dispensations where, for example, a taxpayer or a member of his family has been seriously ill, the taxpayer has been unavoidably absent, or the taxpayer's records have been destroyed. Internal Revenue Manual (CCH) § 4350, (24) ¶ 22.2(2) (Mar. 20, 1980) (Audit Technique Manual for Estate Tax Examiners). Thus the Government itself has eschewed a bright-line rule and committed itself to *necessarily* case-by-case decisionmaking. The gravamen of the IRS's exemptions seems to be that a taxpayer will not be penalized where he reasonably was *unable* to exercise ordinary business care and prudence. The IRS does not appear to interpret its enumerated exemptions as being exclusive, see *id.*, ¶ 22.2(3), and it might well act arbitrarily if it purported to do otherwise.[3] Thus a substantial argument can be made that the draconian penalty provision should not apply where a taxpayer convincingly demonstrates that, for whatever reason, he reasonably was unable to exercise ordinary business care.

Many executors are widows or widowers well along in years, and a penalty against the "estate" usually will be a penalty against their inheritance. Moreover, the principles we announce today will apply with full force to the personal income tax returns required of every individual who receives an annual gross income of $1,000 or more. See 26 U. S. C. § 6651(a)(1); see also § 6012. Although the overwhelming

---

[3] It is difficult to perceive a material distinction, for example, between a filing delay that results from a serious illness in the taxpayer's immediate family or a taxpayer's unavoidable absence—situations in which the IRS excuses the delay—and a filing delay that comes about because the taxpayer is infirm or incompetent. The common thread running through all these unfortunate situations is that the taxpayer, for reasons beyond his control, has been unable to exercise ordinary business care and prudence.

majority of taxpayers are fully capable of understanding and complying with the prescribed filing deadlines, exceptional cases necessarily will arise where taxpayers, by virtue of senility, mental retardation, or other causes, are understandably unable to attain society's norm. The Court today properly emphasizes the need for efficient tax collection and stern incentives. *Ante,* at 248–249. But it seems to me that Congress and the IRS already have made the decision that efficiency should yield to other values in appropriate circumstances.

Because the respondent here was fully capable of meeting the required standard of ordinary business care and prudence, we need not decide the issue of whether and under what circumstances a taxpayer who presents evidence that he was *unable* to adhere to the required standard might be entitled to relief from the penalty. As the Court has expressly left this issue open for another day, I join the Court's opinion.