**DIRECTOR OF REVENUE, Appellant Below, Appellant,**

v.

**J.E. RHOADS & SONS, INC., Appellee Below, Appellee.**

Supreme Court of Delaware.

Submitted: June 3, 1993.

Decided: Aug. 17, 1993.

Joseph Patrick Hurley, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellant.

Before VEASEY, C.J., MOORE and WALSH, JJ.

WALSH, Justice:

This is an appeal by the Director of Revenue of the State of Delaware ("Director") from a decision of the Superior Court which affirmed a ruling of the Delaware Tax Appeal Board ("Board") abating certain tax penalties assessed against the ap-

pellant, J.E. Rhoads & Sons, Inc. ("Rhoads"). The Director contends that the Superior Court and the Board erred in the application of the legal standard required to find reasonable cause to abate a penalty under 30 *Del.C.* § 1194(a) for late filing of a withholding tax return. Rhoads did not file a brief in this Court but relies upon the record presented in the Superior Court.

This controversy began with the Director's assessment of penalties against Rhoads for late payment of state withholding taxes for the period from January, 1988 through August, 1989. Initially, the Director abated the penalty for the month of January, 1988 but refused abatement with respect to the balance of the penalties. On appeal, the Board concluded that "reasonable cause" existed for abatement of all penalties.

The factual basis for the Board's finding of reasonable cause is set forth in the following stipulation of fact submitted by the parties incident to the Superior Court appeal:

## STATEMENT OF FACTS

The factual hearing below which resulted in the appealed decision, produced a 46 page transcript, which is contained in the Board's record. Rhoads contended that the conduct of an employee constituted reasonable cause to file withholding tax returns late. The Director contended that no reasonable cause existed.

At the hearing Kevin Wooters, President and Chief Executive Officer ("Wooters") testified that several persons had been employed to perform bookkeeping duties, including payment of State and Federal withholding taxes, for the corporation. Wooters testified that because of Rhoads' poor economic condition it had difficulty attracting, hiring, and keeping competent persons to perform bookkeeping duties. (Transcript at 21) For the short period of May 1987 to November 1987 Brian Maloney ("Maloney") was employed to perform these duties. (Transcript at 24) Maloney quit his employment in November 1987 and sometime between November 1987 and January 1988 Rhoads discovered that Maloney had failed to perform all his duties. (Transcript at 26 and 31) At no time during the hearing was it alleged, however, that Maloney failed to file or pay state withholding taxes for any period.

In February, 1988, Wooters, then Vice President of the corporation, assumed responsibility for filing and payment of the State withholding taxes. (Transcript at 28) In July 1988 Rhoads filed late State withholding tax returns due for January 1988 and the State of Delaware, Division of Revenue ("Division of Revenue") subsequently assessed interest and late file penalties. In September 1988 Rhoads paid the assessed interest and protested the late file penalty citing the incompetence of its accountant Maloney as grounds for abatement. The penalty assessment was abated by the Division of Revenue in December 1988. (Transcript 14, 15, 18; Board Exhibit 1–A). The monthly returns required to be filed during the period of February 1988 to August 1989 were filed late at various times between January 1989 to October 1989 with payments of the tax. The late filing came about as a conscious decision to use income taxes withheld from employees to meet other business obligations. (Transcript at 41 and 42). On each occasion the Division of Revenue assessed interest, a failure to file penalty and a negligence penalty. Rhoads paid the interest and protested the penalties to the Director of Revenue. The basis for the protests was that incompetence of its accountant, "Maloney" constituted reasonable cause for the failure to file the tax returns. The protests were denied by the Division of Revenue. (Transcript 14, 15, 18; Board Exhibits 1–A through 1F).

The late filing penalty is authorized under 30 *Del.C.* § 1194(a) which provides in pertinent part:

In case of failure to file any return required under this chapter on the date prescribed therefor ... unless it can be shown that such failure is due to reason-

able cause and not due to wilful neglect, there shall be added to the amount required to be shown as tax on such return ... an additional 5% for each additional month ... during which such failure continues, not exceeding 50% in the aggregate.

Subsection (b) of § 1194 imposes a separate penalty for non-payment of taxes, a matter not at issue here since Rhoads was not assessed a penalty for failure to pay the taxes due.

Although the terms "reasonable cause" and "willful neglect" are not specifically defined by statute, 30 *Del.C.* § 1101 provides that "[a]ny term used in this chapter shall have the same meaning as when used in a comparable context in the laws of the United States referring to federal income taxes, unless a different meaning is clearly required." Accordingly, we look to federal law for interpretive guidance.

In *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), the Supreme Court considered the question whether an executor's agent's negligence amounted to reasonable cause sufficient to permit abatement of a late filing fee. The Court noted that, while determining the elements that constitute reasonable cause is a question of fact, the determination of what elements must be proven is a question of law. *Id.* at 249 n. 8, 105 S.Ct. at 692 n. 8. The Court defined "reasonable cause" as that degree of care that requires "the taxpayer to demonstrate that he exercised 'ordinary business care and prudence' *but nevertheless was 'unable to file the return within the prescribed time.'* " *Id.* at 246, 105 S.Ct. at 690 (quoting 26 C.F.R. § 301.6651(c)(1) (1984)) (emphasis added). The Supreme Court defined "willful neglect" to mean "a conscious, intentional failure or reckless indifference." *Id.* at 245, 105 S.Ct. at 690. In applying these definitions to the facts before it, the Court established a "bright line rule" that reliance on an agent to timely file a tax return is not reasonable cause as a matter of law. *Id.* at 252, 105 S.Ct. at 693.

*Boyle's* bright line standard was applied in another case involving a negligent employee. In *Universal Concrete Products Corp. v. United States*, E.D.Pa., 90–2 USTC (CCH) 50,440, 1990 WL 106584 (1990), *aff'd*, 3d Cir., 941 F.2d 1204 (1991), a taxpayer sought abatement of late filing penalties on the basis that the company controller misled the company into believing that its tax deadlines were being met. Although, as here, the taxpayer adequately supervised the controller and an independent accounting firm discerned no improper financial conduct on his part, the controller nonetheless failed to file the taxpayer's return in a timely manner. Citing *Boyle*, the court rejected the claim of reliance even though the corporation had not filed returns or made deposits during the employment of the controller. By contrast, in this case the non-filings occurred *after* the negligent employee had departed and his shortcomings discovered. Thereafter, Wooters decided not to make further filings.

Other federal decisions support the Director's contention that reasonable cause is limited to circumstances beyond the taxpayer's control. *Daum Industries, Inc. v. United States*, D.Ida., 71–2 USTC (CCH) 9609 (1971) (corporate treasurer's decision to fund payroll rather than file employment tax return was imputed to corporate president and precluded finding of reasonable cause despite president's claim that he was unaware of the non-filing); *Leo Sanders v. Commissioner*, 21 T.C. 1012 (1954), *aff'd*, 10th Cir., 225 F.2d 629, *cert. den.* 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956) (lack of funds to employ staff does not, as a matter of law, constitute reasonable cause for non-filing); *Weiland v. Commissioner*, 44 T.C.M. (CCH) 1396 (1982) (taxpayer's claim that he was too busy trying to save a bankrupt company not sufficient cause to abate penalty for non-filing); *Darrell Harris, Inc. v. United States*, W.D.Okla., 770 F.Supp. 1492 (1991) (cash flow difficulties do not constitute reasonable cause not to file).

The Board's conclusion that the taxpayer's reliance on its errant accountant constitutes "reasonable cause" to permit abatement of the late filing penalties not

only misapplies the legal test but lacks a factual predicate as well. No delinquent filings occurred while the accountant was employed at Rhoads from May to November 1987. In February, 1988, when Wooters assumed responsibility for the tax filings only the monthly filing for January 1988 was delinquent and the Director abated the late filing penalty attributed to that month when Rhoads requested an abatement. From February 1988 onward, Wooters was clearly on notice that current filings were delinquent but he apparently made a conscious decision to turn his attention elsewhere in an effort to straighten out the Company's mishandled financial affairs. Wooters never claimed, and the Board did not find, that he lacked the ability to file a return, an independent step which could have been accomplished even without payment of the tax. Under the *Boyle* standard, in the absence of such inability, reasonable cause cannot be established. The Superior Court's ruling that the Board's decision was supported by substantial evidence merely compounded the error.

In failing to apply the correct standard for determining taxpayer excusal, the Board committed fundamental error. Since the stipulated evidence clearly shows that the taxpayer's explanation for failing to file in this case is not attributable to the requisite inability to comply with the filing obligation, reasonable cause within the meaning of 30 *Del.C.* § 1194(a) has not been demonstrated as a matter of law. Accordingly, the Superior Court's affirmance of the Board must be reversed.

The judgment of the Superior Court is REVERSED and this matter is REMANDED to the Superior Court with direction for FURTHER REMAND to the Board for the entry of a decision in favor of the Director.