T.C. Summary Opinion 2002-129

UNITED STATES TAX COURT

JOSEPH P. & MARY B. MCDONALD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11200-00S.          Filed October 4, 2002.

<u>E. Martin Davidoff</u>, for petitioners.

<u>Rodney J. Bartlett</u> and <u>Timothy S. Sinnott</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.

In separate notices of deficiency, respondent determined that petitioners are liable for the following additions to tax for the respective taxable years:

| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
|------|-----------------|-----------------|--------------|
| 1983 | $764 | $15,285* | $3,821 |
| 1984 | 18 | 359* | --- |

&ast; 50 percent of the interest due on $15,285 and $359 for 1983 and 1984, respectively.

The issues for decision are whether petitioners are liable for each of these additions to tax.[1]

## Background

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Sparta, New Jersey, on the date the petition was filed in this case.

Petitioner husband (Mr. McDonald) is a physician. During 1983 and 1984, he operated a sole proprietorship as a physician, taking in gross receipts of $244,555 and $290,653 for a profit of $172,252 and $204,704, respectively. He started this business in 1979, and approximately 1 year later he was referred to an accountant named Paul Trimboli. Mr. Trimboli assisted

[1]In the petition, petitioners argued (1) that the deficiency upon which the additions to tax are based is incorrect, and (2) that petitioners "believe the statute of limitations has expired." Petitioners did not address these issues at trial or in their posttrial memorandum of authorities. We therefore consider them to have been abandoned, and we need not address them here.

Mr. McDonald with the bookkeeping for his medical practice which was needed for the preparation of petitioners' tax returns.

During the years in issue, petitioner wife (Mrs. McDonald) was a part-time graduate student pursuing a master's degree in science and psychiatric nursing. Like Mr. McDonald, she has no academic background in finance, accounting, or economics. Mrs. McDonald met Mr. Trimboli approximately the same time as did Mr. McDonald, when Mr. Trimboli began preparing their tax returns.

Through the end of 1982, petitioners' relationship with Mr. Trimboli was solely in the context of tax return preparation. Starting in early 1983, Mr. Trimboli began offering financial planning services in addition to accounting and tax services. Petitioners began using these services, and as of the end of 1983 petitioners had invested in various mutual funds as well as several partnerships which had been recommended by Mr. Trimboli. In December 1983, again upon Mr. Trimboli's recommendation, petitioners purchased 14 units in a partnership known as Arid Land Research Partners ("Arid Land" or "the partnership"). Petitioners purchased their interest in the partnership with cash of $15,400 and a promissory note of $23,100.[2] In making the

---

[2]The parties stipulated that the investment was made with $14,000 in cash and a promissory note of $24,500. However, we do not accept this stipulation because it is contradicted both by the terms of the private placement memorandum (referenced in the stipulation itself) and by the Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., sent to petitioners by the

(continued...)

investment, petitioners relied solely upon Mr. Trimboli's advice, they consulted no one else, and they made no independent investigation or inquiry into its legitimacy.

Mr. Trimboli had been working at a public accounting firm since 1976. In 1983, Mr. Trimboli left the firm in order to start his own business along with one partner, Gerard Cannito, in which he began offering services as a financial planner as well as a certified public accountant. Prior to leaving the firm, Mr. Trimboli had no experience as a financial planner. By the end of 1983, in addition to having earned a bachelor's degree in accounting, Mr. Trimboli was in the process of completing courses required to become a certified financial planner through the College of Financial Planning.

Mr. Trimboli learned of jojoba investments in early 1983. In June 1983 and again in September 1983, Mr. Trimboli traveled to California to investigate the partnership as a potential investment opportunity. He traveled to Blythe, California, and to Bakersfield, California, where there were plantations on which jojoba was already being grown. He also visited a research facility located at the University of California at Riverside which was involved in the growing of jojoba. On these trips, Mr. Trimboli met with Robert Cole, who would become the general

---

[2](...continued)
partnership for taxable year 1983.

partner of the partnership, and Eugene Pace, who was the president of what was to become the purported research and development contractor to the partnership, U.S. Agri Research & Development Corp. Mr. Trimboli had no experience in farming or in research and development ventures, and he was aware that Mr. Cole, the general partner, also had no experience with respect to jojoba.

A private placement memorandum for investments in the partnership, dated December 1, 1983, was distributed to petitioners. Prefatory material in the memorandum contained the following caveats:

> PROSPECTIVE INVESTORS ARE CAUTIONED NOT TO CONSTRUE THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS AS CONSTITUTING LEGAL OR TAX ADVICE. * * * INVESTORS ARE URGED TO CONSULT THEIR OWN COUNSEL AS TO ALL MATTERS CONCERNING THIS INVESTMENT.

> *   *   *   *   *   *   *

> NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED OR SHOULD BE INFERRED WITH RESPECT TO THE ECONOMIC RETURN OR TAX ADVANTAGES WHICH MAY ACCRUE TO THE INVESTORS IN THE UNITS.

> EACH PURCHASER OF UNITS HEREIN SHOULD AND IS EXPECTED TO CONSULT WITH HIS OWN TAX ADVISOR AS TO THE TAX ASPECTS.

In a section entitled "Use of Proceeds", an estimation of various expenditures, the memorandum stated that 90.7 to 93.0 percent of the capital contributions from the partners would be allocated to the research and development contract (regardless of the total amount of the contributions). The only other expenses were to be

organizational costs, legal fees, and commissions.  One of the

"risk factors" listed for the investment contained the following

discussion:

> Federal Income Tax Consequences:  An investment in the
> units involves material tax risks, some of which are set
> forth below.  Each prospective investor is urged to consult
> his own tax advisor with respect to complex federal (as well
> as state and local) income tax consequences of such an
> investment.
>         *    *    *    *    *    *    *

> (c) Validity of Tax Deductions and Allocations.

> The partnership will claim all deductions for
> federal income tax purposes which it reasonably
> believes it is entitled to claim.  There can be no
> assurance that these deductions may not be contested or
> disallowed by the Service * * * .  Such areas of
> challenge may include * * * expenditures under the R &
> D Contract * * * .

>     *      *      *      *      *      *      *

> The Service is presently vigorously auditing
> partnerships, scrutinizing in particular certain
> claimed tax deductions. * * * Counsel's opinion is
> rendered as of the date hereof based upon the
> representations of the General Partner * * * .  Counsel
> shall not review the Partnership's tax returns. * * *

> (d) Deductibility of Research or Experimental
> Expenditures.

> The General Partner anticipates that a substantial
> portion of the capital contributions of the Limited
> Partners to the Partnership will be used for research
> and experimental expenditures of the type generally
> covered by Sections 174 and 44F of the Code
> (particularly in recently issued IRS regulations issued
> thereunder).  However, prospective investors should be
> aware that there is little published authority dealing
> with the specific types of expenditures which will
> qualify as research or experimental expenditures within
> the meaning of Section 174, and most of the
> expenditures contemplated by the Partnership have not

been the subject of any prior cases or administrative determinations.

There are various theories under which such deductions might be disallowed or required to be deferred. * * * No ruling by the Service has been or will be sought regarding deductibility of the proposed expenditures under Section 174 of the Code.

A section entitled "Tax Aspects" contains the following information concerning a legal opinion from outside counsel obtained by the general partner:

The General Partner has received an opinion of counsel concerning certain of the tax aspects of this investment. The opinion * * * is available from the General Partner. Since the tax applications of an investment in the Partnership vary for each investor, neither the Partnership, the General Partner nor counsel assumes any responsibility for tax consequences of this transaction to an investor. * * * The respective investors are urged to consult their own tax advisers with respect to the tax implications of this investment. * * *

The opinion letter referenced in the private placement memorandum was one which purportedly had been written for Mr. Cole by outside counsel based on information provided by Mr. Cole. The letter, dated December 7, 1983, concludes by stating general caveats and disclaimers along with the opinion that "it is more likely than not that a partner of Arid Land Research Partners, a Limited Partnership will prevail on the merits of each material tax issue presented herein." However, the conclusions regarding the issue of the section 174 deduction in particular were vague and nonconclusive in nature.

Finally, the investor subscription agreement accompanying the private placement memorandum required a subscriber upon purchase of an interest to aver that:

> He understands that an investment in the Partnership is speculative and involves a high degree of risk, there is no assurance as to the tax treatment of items of Partnership income, gain, loss, deductions of credit and it may not be possible for him to liquidate his investment in the Partnership.

Mr. Trimboli received commissions for selling interests in the partnership, similar to the commissions he received for selling other types of investments. Petitioners were aware that Mr. Trimboli received these commissions, and in fact petitioners never paid Mr. Trimboli a separate fee for his financial planning services. In addition to the commissions, Mr. Trimboli was retained by Arid Land to prepare the 1983 tax return for the partnership. In preparing the partnership's return, Mr. Trimboli relied on financial information provided by Mr. Cole and on the opinion letter given to Mr. Cole by outside counsel. The 1983 Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., sent to petitioners as partners in Arid Land reflected their share of the losses claimed by the partnership on the return prepared by Mr. Trimboli. Mr. Trimboli's partner, Mr. Cannito, subsequently prepared petitioners' joint Federal income tax return for the taxable year 1983, claiming a deduction for a loss arising from the Arid Land investment in the amount of $34,739, pursuant to the Schedule K-1 received by petitioners.

Mr. Cannito also prepared petitioners' 1984 joint Federal income tax return, claiming a deduction for another loss arising from the Arid Land investment in the amount of $798.

As the result of partnership level proceedings concerning Arid Land Research Partners, this Court ultimately entered a decision disallowing in full the partnership's claimed ordinary loss in each of the taxable years 1983 and 1984. This decision was based upon a stipulation by the partnership and the Commissioner to be bound by the outcome of the case in which this Court rendered our opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. In that case, we found that the Utah Jojoba I Research partnership ("Utah I") was not entitled to a section 174(a) research or experimental expense deduction (or a section 162(a) trade or business expense deduction) because (a) Utah I did not directly or indirectly engage in research or experimentation, and (b) the activities of Utah I did not constitute a trade or business, nor was there a realistic prospect of Utah I ever entering into a trade or business. Id.

Following the entry of the decision concerning the partnership, respondent adjusted petitioners' returns by disallowing their claimed shares of the partnership losses, $34,739 in 1983 and $798 in 1984. In the statutory notices of deficiency which provide the basis for our jurisdiction in this case, respondent determined that petitioners are liable for

additions to tax for 1983 and 1984 of $764 and $18 under section 6653(a)(1), and 50 percent of the interest due on a $15,285 deficiency and on a $359 deficiency under section 6653(a)(2). Respondent also determined that petitioners are liable for an addition to tax for 1983 in the amount of $3,821 under section 6661(a).

## Discussion

### Negligence

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is defined to include "any failure to reasonably comply with the Tax Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances." Merino v. Commissioner, 196 F.3d 147, 154 (3d Cir. 1999) (quoting Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990)), affg. T.C. Memo. 1997-385.

Petitioners' primary argument is that they were not negligent because they relied on advice from Mr. Trimboli. Reasonable reliance on professional advice may be a defense to

the negligence additions to tax.  United States v. Boyle, 469

U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849,

888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another

issue 501 U.S. 868 (1991).  The advice must be from competent and

independent parties, not from the promoters of the investment.

LaVerne v. Commissioner, 94 T.C. 637, 652 (1990), affd. without

published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401

(10th Cir. 1991), affd. without published opinion 956 F.2d 274

(9th Cir. 1992); Rybak v. Commissioner, 91 T.C. 524, 565 (1988).

Petitioners analogize their case to the case of Anderson v.

Commissioner, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C.

Memo. 1993-607.  In Anderson, the taxpayer relied on both an

investment adviser and an accountant in making his investment.

The court found that reliance on the investment adviser, who

received a commission for selling the investment to the taxpayer,

was reasonable under the circumstances of the case.  Cf., e.g.,

Carmena v. Commissioner, T.C. Memo. 2001-177 (financial adviser

receiving commissions for sale of investments had inherent

conflict of interest in advice given to investors).  However, the

court stressed that the investment adviser--an independent

insurance agent and registered securities dealer--was a good

friend of the taxpayer and was not affiliated with the investment

the taxpayers entered into.  Anderson v. Commissioner, supra at

1271.

The present case is distinguishable from <u>Anderson</u> in two important respects. First, in the case at hand, Mr. Trimboli was involved with principals of the investment prior to the creation of the partnership. In particular, he was in contact with Mr. Cole, who was to become the general partner of Arid Land, and with Mr. Pace, who was to become the president of the research and development contractor. Although petitioners argue that Mr. Trimboli was an outsider who coincidentally prepared the partnership's return, we find that Mr. Trimboli's relationship with the partnership and its principals makes him more than a disinterested commission-based salesman, as was the case in <u>Anderson</u>. In light of his relationship to Arid Land, Mr. Trimboli cannot be considered to be an independent adviser.

Second, the investment adviser in <u>Anderson</u> was a good friend of the taxpayer. Petitioners' relationship with Mr. Trimboli was purely professional and is not analogous to the close friendship between taxpayer and adviser in <u>Anderson</u>. See also <u>Dyckman v. Commissioner</u>, T.C. Memo. 1999-79 (taxpayers reasonably relied on an adviser who was a close personal friend); <u>Reile v. Commissioner</u>, T.C. Memo. 1992-488 (taxpayers reasonably relied on advice from an adviser who was an acquaintance and fellow "temple recommend holder"). Furthermore, petitioners' professional dealings with Mr. Trimboli were only in the context of an accountant-client relationship, primarily in the preparation of

their tax returns. Petitioners could not have had prior dealings with Mr. Trimboli as a financial planner because he had no experience in the field prior to 1983. Cf. <u>Wright v. Commissioner</u>, T.C. Memo. 1994-288 (taxpayers reasonably relied upon an individual who was recommended to them as a financial adviser, who had a strong presence in the community as such, and who misled the taxpayers concerning the propriety of an investment). Thus, the relationship between petitioners and Mr. Trimboli was not close enough or prolonged enough--either personally or professionally--to merit special consideration in the level of due care required by petitioners in this case.

With respect to his role as tax adviser,[3] Mr. Trimboli largely relied on the opinion letter addressed to Arid Land's general partner, Mr. Cole. There is little to indicate that Mr. Trimboli researched the issues himself thoroughly enough to come to any independent conclusions concerning the propriety of the deductions. We find that Mr. Trimboli's reliance on the opinion letter further supports our conclusion that Mr. Trimboli did not render independent, objective advice concerning the propriety of the partnership's position on tax issues. Thus, we do not accept petitioners' assertion that Mr. Trimboli's reliance on the

---

[3]We assume for the sake of argument that petitioners approached Mr. Trimboli for substantive tax advice. There is no evidence in the record that petitioners did more than rely on Mr. Trimboli's representation that Arid Land was a good financial investment.

opinion letter should itself insulate petitioners from the negligence additions to tax.

Because Mr. Trimboli was not an independent adviser, petitioners' reliance on any advice from him was not reasonable. Bello v. Commissioner, T.C. Memo. 2001-56 (reliance on advice from an accountant concerning an investment was unreasonable where the accountant had been retained by the investment promoter); LaVerne v. Commissioner, supra; Rybak v. Commissioner, supra.

Finally, petitioners cite Hummer v. Commissioner, T.C. Memo. 1988-528, for the proposition that taxpayers cannot be negligent where the relevant legal issue was "not well settled". Petitioners, however, did not receive substantive advice concerning the deduction from anyone independent of the investment, nor did they conduct their own investigation into the propriety of the deduction. Indeed, there is no indication that petitioners ever were aware of the nature of the purportedly uncertain legal issues involved. Petitioners may not rely upon a "lack of warning" as a defense to negligence where no reasonable investigation was ever made which would have allowed them to discover such a lack of warning, and where they were repeatedly warned of the relevant risks in the private placement memorandum. Christensen v. Commissioner, T.C. Memo. 2001-185; Robnett v. Commissioner, T.C. Memo. 2001-17.

The private placement memorandum contained numerous warnings regarding the tax risks involved with making an investment in Arid Land. Although the parties stipulated that petitioners received a copy of the memorandum, petitioners could not recall having reviewed it prior to making the investment. In any case, the warnings were there and would have been evident if petitioners had exercised reasonable care and read the memorandum. After making their investment regardless of these risks, petitioners claimed a loss of $34,739 for 1983 despite the fact that they had only recently invested cash of just $15,400, and they subsequently claimed another loss of $798 for 1984.[4] The disproportionate and accelerated loss in 1983--along with the resulting substantial tax savings--should have been further warning to petitioners for the need to obtain outside, independent advice regarding the propriety of the deductions. Despite these warnings, petitioners did not seek such advice or conduct any other type of inquiry into the propriety of the deductions. We find that it was negligent for petitioners to

---

[4]Petitioners argue that the instructions for Schedules K-1 provided by the Internal Revenue Service required them to report the loss. The instructions state that the individual taxpayer "must treat partnership items * * * consistent with the way the partnership treated the items on its filed return." The instructions have further provisions dealing with errors on Schedules K-1 as well as with the filing of statements to explain inconsistencies between the partnership's return and the taxpayer's return. We find to be unreasonable any belief by petitioners that they were required by law to mechanically deduct a loss which was improper.

have claimed these deductions under the circumstances of this case.  We sustain respondent's determination that petitioners are liable for the section 6653(a)(1) and (2) additions to tax for negligence.

Substantial Understatement

Section 6661(a), as amended by the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951, applicable to penalties assessed after October 21, 1986, the date of enactment, provides for an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax for the taxable year.  A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6661(b)(1)(A).  Generally, the amount of an understatement is reduced by the portion of the understatement which the taxpayer shows is attributable to either (1) the tax treatment of any item for which there was substantial authority, or (2) the tax treatment of any item with respect to which the relevant facts were adequately disclosed on the return.  Sec. 6661(b)(2)(B).  If an understatement is attributable to a tax shelter item, however, different standards apply.  First, in addition to showing the existence of substantial authority, a taxpayer must show that he reasonably believed that the tax treatment claimed was more

likely than not proper.  Sec. 6661(b)(2)(C)(i)(II).  Second,
disclosure, whether or not adequate, will not reduce the amount
of the understatement.  Sec. 6661(b)(2)(C)(i)(I).[5]

The understatement of tax of $15,285 on petitioners' return
is greater than $5,000 and is greater than 10 percent of the tax
required to be shown on the return.  Consequently, it is a
substantial understatement of tax.  Sec. 6661(b)(1)(A).
Petitioners concede (and we likewise find) that they neither had
substantial authority nor made adequate disclosure with respect
to claiming the Arid Land loss as a deduction.  Petitioners' sole
argument is that they acted with reasonable cause and in good
faith in claiming the loss.

Section 6661(c) provides the Secretary with the discretion
to waive the section 6661(a) addition to tax if the taxpayer
shows he acted with reasonable cause and in good faith.
Generally, we review the Secretary's failure to waive the
addition to tax for abuse of discretion.  Martin Ice Cream Co. v.
Commissioner, 110 T.C. 189, 234-235 (1998).  Nothing in the
record indicates petitioner requested a waiver for good faith and
reasonable cause under section 6661(c).  In the absence of such a
request, we cannot review respondent's determination for an abuse
of discretion.  See id.  We nevertheless point out that, for the

[5]As a result of petitioners' concessions and our findings,
discussed below, we need not decide whether the tax shelter
provisions are applicable in this case.

same reasons we found petitioners to be negligent in claiming the reported loss as a deduction, we would also find petitioners lacked reasonable cause for doing so.  See sec. 6661(c); sec. 1.6661-6(b), Income Tax Regs.  We sustain respondent's determination that petitioners are liable for the section 6661(a) addition to tax for a substantial understatement of tax.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.