In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3390

YOUNG KIM,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court
No. 11902-10—**David Laro**, *Judge*.

ARGUED APRIL 12, 2012—DECIDED MAY 9, 2012

Before EASTERBROOK, *Chief Judge*, and MANION and SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. At age 56, Young Kim left his position as a partner in a law firm and enrolled in the London School of Economics. Employees who depart at age 55 and up may withdraw money from the employer's retirement plan. They must pay income tax (retirement plans contain pre-tax dollars), but they do not owe the 10% additional tax that the Internal Revenue Code imposes on most withdrawals before

age 59½. 26 U.S.C. §72(t)(1), (2)(A)(v). During 2005 Kim moved the funds from the law firm's retirement plan to an individual retirement account. A rollover is not a taxable event. 26 U.S.C. §402(c); 26 C.F.R. §1.402(c)–2. During 2006 Kim withdrew about $240,000 from the IRA. He paid the income tax but not the 10% additional tax. The Commissioner of Internal Revenue concluded that he owes the 10% tax and, because he had not paid it, also owes a penalty for substantial underpayment of taxes. 26 U.S.C. §6662.

Kim sought review by the Tax Court, which held a trial. The parties reduced the scope of the dispute because the money spent on tuition and other education expenses attending the London School of Economics—and the amount Kim paid for his daughter's tuition and other education expenses at Bryn Mawr College—is not subject to the 10% tax. See 26 U.S.C. §72(t)(2)(E). The Tax Court held that Kim owes the 10% tax on the withdrawn money that he had put to other uses and also owes the penalty for a substantially inaccurate return. The parties agreed that, if the Tax Court's decision is correct, Kim owes $20,456.50 under §72(t)(1) and $4,091.30 under §6662. Judgment was entered to that effect. Kim asks us to hold that he owes nothing—or at least that he does not owe the accuracy-related penalty under §6662.

Kim relies on §72(t)(2)(A)(v), which provides that the 10% additional tax does not apply to a distribution from a pension plan "made to an employee after separation from service after attainment of age 55". His im-

mediate problem is that the distribution from the IRA was not "made to an employee"; he was not an employee of the IRA's custodian. He had been an employee of the law firm and therefore could have taken a distribution from its pension plan, but that's not what happened.

Just in case this point was unclear, the Internal Revenue Code adds: "Subparagraphs (A)(v) and (C) of paragraph (2) shall not apply to distributions from an individual retirement plan." 26 U.S.C. §72(t)(3)(A). Kim withdrew money from an IRA, an individual plan; subparagraph 72(t)(2)(A)(v) therefore "shall not apply". Kim calls his account a "SEP IRA" ("simplified employee pension", see 26 U.S.C. §408(k)) as opposed to a "traditional IRA," but §72(t)(3)(A) does not distinguish among flavors of individual retirement plans. Before reaching 59½, Kim withdrew money from an individual retirement plan, rather than from his former employer's plan, and therefore must pay the 10% additional tax.

Kim insists that this makes no sense. He could have taken the money from the law firm's pension plan without the 10% additional tax; why should it matter that the money went from the law firm's plan to an IRA before being withdrawn? The answer is that the Internal Revenue Code *says* that it matters, and Kim does not contend that §72(t)(3)(A) violates the Constitution. Many parts of the tax code are compromises, and all parts reflect the need for lines that can't be deduced from first principles. Why can an employee withdraw

money from an employer's plan without the 10% addition at age 55 but not age 54? Why does the 10% additional tax apply to withdrawals at age 59 and 181 days, but not 59 and 183 days? These questions cannot be answered by logical analysis. The Code's lines are arbitrary. The law firm's pension plan put Kim to a choice between taking the money and moving part or all of it to an IRA. He chose to roll over the whole balance, because he did not want to pay any income tax immediately. The Code allowed Kim to extend the tax deferral at the cost of the 10% additional tax if he later took some of the money before age 59½.

Money deposited in pension plans and many IRAs is not subject to income tax until the funds (including interest and capital appreciation) are withdrawn. Tax deferral is expensive to the Treasury, so the Code makes resort to some tax-deferral opportunities costly. Hence someone who puts money in an IRA can't take it out freely before age 59½; the prospect of the 10% additional tax on early withdrawal makes IRAs less attractive (and the 10% tax also compensates the Treasury for some of the revenue foregone from deferred payment of the income tax on sheltered funds). Subsection 72(t)(2)(A)(v) offers an opportunity for avoiding the 10% tax on withdrawals between age 55 and age 59½, but that opportunity is limited by the "to an employee" language and the proviso in §72(t)(3)(A), lest it effectively reduce the age of free withdrawal from 59½ to 55. The interaction of these provisions is bound to seem irrational to many affected persons, but Congress has concluded that *some* lines of this kind are appro-

priate. The judiciary is not authorized to redraw the boundaries.

Fidelity Investments, which administers Kim's IRA, sent him a statement in 2006 informing him that he owed both income tax and the 10% additional tax. But the accountant who prepared his tax return omitted the 10% additional tax, which, coupled with the fact that the deficiency exceeded $5,000, led to the substantial-under-statement penalty.

Section 6662 excuses the taxpayer if "there is or was substantial authority for [the tax return's] treatment" (§6662(d)(2)(B)(i)) or all relevant facts were disclosed on the return and "there is a reasonable basis for the tax treatment of such item by the taxpayer" (§6662(d)(2)(B)(ii)(II)). Kim contends that there was "substantial authority" for his return's treatment of the withdrawal, but there was and is no authority at all for it. Kim does not contend that any court has accepted his argument that an IRA (SEP flavor or other-wise) is the same as an employer's plan under §72(t)(2)(A)(v).

The Tax Court treats the "reasonable basis" exception in §6662(d)(2)(B)(ii)(II) as applicable when the taxpayer furnishes accurate information to, and then relies in good faith on, the opinion of a competent tax adviser. See *Neonatology Associates, P.A. v. CIR*, 115 T.C. 43, 98–99 (2000), affirmed, 299 F.3d 221, 233–35 (3d Cir. 2002); 26 C.F.R. §1.6664–4(c). See also *United States v. Boyle*, 469 U.S. 241, 251 (1985). The record does not show what information Kim furnished to his accountant or whether

the accountant competently analyzed the situation under §72(t). The Tax Court accordingly concluded that Kim could not take advantage of §6662(d)(2)(B)(ii)(II).

Kim observes that the Tax Court lacked any evidence from the accountant, but the shortfall is Kim's own responsibility. After the deadline for submitting expert evidence had passed, Kim filed a motion for a continuance, which the Tax Court denied. That decision was not an abuse of discretion. Kim might have asked the Commissioner to stipulate to what the accountant would have testified, but he did not make such a request. Nor did he make an offer of proof. So we have no idea what evidence the accountant would have provided. Kim testified at the trial but did not tell the Tax Court what information he had furnished to the accountant. With respect to the facts relevant under *Neonatology Associates*, the record is essentially empty. There is no warrant for upsetting the Tax Court's decision.

Finally, Kim asks us to order the Commissioner to abate interest on his underpayments. That subject was not before the Tax Court and therefore is not before us. *CIR v. McCoy*, 484 U.S. 3 (1987). Kim must ask for this relief from the Commissioner, and if he is dissatisfied with the Commissioner's decision he can file a separate petition in the Tax Court. See 26 U.S.C. §6404(e)(1); *Bourekis v. CIR*, 110 T.C. 20, 25–26 (1998).

AFFIRMED