T.C. Memo. 2001-146

UNITED STATES TAX COURT

MICHAEL T. CHAPPELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2875-99.                    Filed June 20, 2001.

Michael T. Chappell, pro se.

<u>Linda J. Wise</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax of $27,643 for 1994 and $27,024 for 1995, an addition to tax under section 6651(a)(1) of $6,897 for 1994, and accuracy-related penalties under section 6662(a) of $5,529 for 1994 and $5,330 for 1995.

After concessions, the issues for decision are:

1. Whether petitioner's proper filing status is head of household for 1994 and 1995, as petitioner contends, or married filing separately, as respondent contends. We hold that it is married filing separately.

2. Whether petitioner is entitled to the earned income credit for 1995. We hold that he is not.

3. Whether petitioner had unreported income from his Schedule C business for 1994 and 1995.[1] We hold that he had unreported income of $42,972 for 1994 and $12,068 for 1995.

4. Whether petitioner may deduct miscellaneous expenses related to his income tax return preparation business for 1994 and 1995. We hold that he may to the extent discussed below.

5. Whether petitioner is liable for the 10-percent addition to tax under section 72(t) for 1995 for an early distribution from a retirement account. We hold that he is.

---

[1] Respondent determined that petitioner had unreported gross receipts for 1995 of $36,714, but now concedes that $23,845.64 is nontaxable or was reported in income by petitioner in that year: $3,759.27 (taxable distribution from retirement money market account included in taxable distribution reported by petitioner); $15,297 (Aug. 3, 1995, workers' compensation settlement payment); $180 of $1,363.42 deposit made on Oct. 3, 1995, and the $180 deposits made on Oct. 25, Nov. 17, and Nov. 28, 1995 (unemployment compensation included in income reported by petitioner); $3,069.37 (nontaxable insurance recovery payment); and a $1,000 debit on May 8, 1995 (adjustment for returned check).

6.    Whether petitioner is liable for the addition to tax for failure to timely file under section 6651(a)(1) for 1994. We hold that he is.

7.    Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1994 and 1995. We hold that he is.[2]

Unless otherwise indicated, section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.   Petitioner

Michael T. Chappell (petitioner) lived in Montgomery, Alabama, when he filed the petition in this case.

Petitioner and Angela Denise McGraw Chappell (Mrs. Chappell) have been married since 1978. They have three children. Lesley Nicole (Nicole) Chappell was born November 22, 1977; Ashley Brooke (Brooke) Chappell was born April 5, 1982; and Michael Tyrone (Tye) Chappell was born January 12, 1986. Nicole was diagnosed with Hodgkins disease around July 1995. Petitioner and Mrs. Chappell lived apart in 1994 and 1995.

---

[2]  Petitioner's liability for self-employment tax, the self-employment tax deduction, the amount of petitioner's standard deduction, and whether petitioner's dependency exemption in 1994 is limited by sec. 151(d)(3) are computational.

Petitioner's father, Charles Chappell, has been a public accountant in Montgomery for more than 30 years.

B.  Petitioner's Tax Preparation Business

Petitioner has operated an unincorporated income tax preparation business in Montgomery for 25 years. He operated the business from his home at 3314 Lower Wetumpka Road in Montgomery in 1994 and 1995.

Petitioner did not prepare or file any Forms W-2 (Wage and Tax Statement) or Forms 1099-MISC (Miscellaneous Income) for his tax preparation business in 1994 and 1995.

C.  Petitioner's Houses

1.  The Lower Wetumpka Road House

On October 2, 1992, petitioner bought a house at 3314 Lower Wetumpka Road (the Lower Wetumpka Road house) in Montgomery for $30,000. Petitioner financed $29,000 of the purchase price through the sellers. Petitioner made the monthly payments on the mortgage (usually $279.42, including taxes and insurance) from his Colonial Bank account. He paid $3,258.33 in 1994 and $2,235.36 in 1995.

The Lower Wetumpka Road house has 918 square feet and contains four rooms and a kitchen and bathroom. Petitioner used the large room in the front of the house as a waiting room during tax filing season. It was also used by the Freedom Quilting Bee, a 150-year old quilting cooperative, on whose behalf petitioner

lobbied. The room contained a copy machine, shelves, a couch, and a large quilting frame. The small room in the front of the house was a year-round office for tax customers. Petitioner kept files and computer records in that room.

During tax season, the medium-sized room adjoining the rear of the large room usually contained three desks and a television. After tax season, the quilters sometimes watched television in the room. Petitioner also used it as a map and meeting room for his lobbying activities.

There is a bedroom next to the room petitioner used as the tax office. The bedroom is about 100 square feet, and contains a bed, a dresser, mirrors, shelves, closet, and a linen closet. That is the only bed in the house.

### 2. The Creek Drive House

On October 15, 1992, petitioner and Mrs. Chappell bought a house at 118 Creek Drive (the Creek Drive house) in Montgomery for $144,000. The Creek Drive house was built in 1992 and has 2,505 square feet. Petitioner paid the mortgage on this house. Mrs. Chappell lived in this house in 1994 and 1995.

One of the rooms in the Creek Drive house was used by petitioner's children to do their homework, by Nicole for tutoring neighbor children in math, and to develop computer software. Petitioner called that room the "one-room schoolhouse".

During the years in issue, Tye attended Flowers Elementary School. Mrs. Chappell's house was in that school district; petitioner's house was not. Tye's school records stated that his home address was 118 Creek Drive (i.e., Mrs. Chappell's house).

D.   Petitioner's Workers' Compensation

Petitioner worked for Unisys Corp. in 1993, 1994, and for part of 1995. He was injured on the job in January 1993, and received weekly workers' compensation of $400 from January 1993 to June or July 1995. He settled his workers' compensation claim on August 3, 1995, for $15,297.

E.   Petitioner's Car and Truck

In June 1993, petitioner and Mrs. Chappell leased a 1993 Mazda 929 automobile. Petitioner made the lease payments and Mrs. Chappell drove this car. Petitioner sometimes drove the Mazda 929 in 1994. During 1994, petitioner drove a 1994 Mazda truck for business and personal purposes.

F.   Petitioner's Pension Distribution From Unisys Corp.

Petitioner was laid off by Unisys in 1995. He applied for unemployment compensation on September 10, 1995.

Petitioner received a taxable distribution of $3,759.27 from Fidelity Investments (his Unisys retirement account) in 1995. Petitioner reported the distribution on his 1995 return. Petitioner did not reach the age of 59-1/2 in 1995.

G.   Petitioner's Income Tax Returns

Petitioner signed his 1994 Federal income tax return on April 15, 1996, and filed it on or after that date.  He timely filed his 1995 return.

Petitioner reported gross receipts from his tax preparation business of $32,400 for 1994 and $38,658 for 1995.  Petitioner deducted car and truck expenses in the amount of his monthly payments on the Mazda truck.  Petitioner deducted the following amounts for business expenses for 1994 and 1995:

|                         | 1994     | 1995     |
|-------------------------|----------|----------|
| Advertising             | $   820  | $   720  |
| Car and Truck expenses  | 3,879    | --       |
| Commissions and fees    | 7,980    | 8,950    |
| Insurance               | 1,750    | 1,800    |
| Interest                | 1,470    | 1,578    |
| Office expense          | --       | 1,821    |
| Rent                    | 3,350    | 3,360    |
| Repairs and maintenance | 339      | 350      |
| Supplies                | 2,875    | 2,718    |
| Taxes and licenses      | 285      | 245      |
| Utilities               | 6,487    | 6,987    |
| Wages                   | 9,500    | 9,879    |

H.   Respondent's Audit and Determination

Respondent's tax auditor, Shirley Todd (Todd), audited petitioner's 1994 and 1995 income tax returns.  Petitioner gave Todd his Colonial Bank statements for January to November 1995. He did not produce any other bank statements.  Petitioner did not give complete records of his income and deductions for 1994 and 1995 to Todd.  Petitioner told Todd that he employed only one individual in his tax preparation activity and that the individual was an independent contractor.

Petitioner deducted as rent on his 1994 and 1995 Schedules C mortgage payments he made for the Lower Wetumpka Road house.

Petitioner told Todd that he received no gifts or inheritances in 1994 and 1995.  He also said that he calculated gross receipts for his tax return activity based on deposits into his Colonial Bank account.

Respondent determined petitioner's gross receipts from the tax preparation business from deposits into petitioner's Colonial Bank account.  Respondent averaged petitioner's deposits for September, October, and November 1995 to estimate an amount for December because petitioner did not give respondent his December 1995 bank statement.

OPINION

Petitioner bears the burden of proof on all issues in this case. See Rule 142(a).[3]

A. Petitioner's Filing Status for 1994 and 1995

Petitioner claimed head of household filing status for 1994 and 1995. An individual will qualify as a head of household if he or she is unmarried at the close of the taxable year and maintains as his or her home a household which is the principal place of abode for more than half of the taxable year of a child of the taxpayer. See sec. 2(b)(1). A married taxpayer qualifies as unmarried for head of household filing purposes if: (1) The taxpayer files a separate tax return; (2) the household is, for more than one-half of the taxable year, the principal place of abode of the taxpayer's child for whom the taxpayer would be entitled to claim a dependency exemption; (3) the taxpayer pays more than one-half of the cost of maintaining the household for the tax year; and (4) the taxpayer's spouse is not a member of the household during the last 6 months of the tax year. See sec. 7703(b). Petitioner contends that his son Tye lived with him at the Lower Wetumpka Road house in 1994 and 1995, and that he

---

[3] The burden of proof provisions of sec. 7491 do not apply here because the examination in this case began before July 22, 1998. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

provided more than half of the cost of maintaining his household in 1994 and 1995.

We disagree. Petitioner did not show that Tye lived with him for more than half of the year in 1994 or 1995. Petitioner's house had one bedroom which contained one bed. There were no other beds in the house and petitioner testified that no one slept on the couch. Petitioner's claim that Tye lived with him in 1994 and 1995 is improbable because Tye (who was 8 in 1994) did not have a bed at petitioner's house and apparently had no place of his own to study or play. We conclude that petitioner is not entitled to head of household status for 1994 and 1995.

B.   The Earned Income Credit

The next issue is whether petitioner is entitled to the earned income credit for 1995. A taxpayer who is married must file a joint return with his or her spouse for the taxable year in order for section 32 to apply. See sec. 32(d). Petitioner was married in 1995, but he and Mrs. Chappell did not file a joint return. Thus, petitioner is not entitled to an earned income credit for 1995.

C.   Unreported Income

Respondent contends that petitioner understated gross receipts from his tax preparation business by $42,972 for 1994 and $12,868 for 1995.

1.  <u>Workers' Compensation</u>

Petitioner contends that weekly workers' compensation of $400 which he received from January 1994 to June or July 1995 should be excluded from respondent's bank deposits analysis.  We disagree for the most part.  Petitioner did not show that he deposited all of the workers' compensation payments in the Colonial Bank account.  He did not provide bank records for 1994, and his 1995 bank statements show only 3 deposits of $400 (2 in January, 1 in October) and 1 deposit of $800 (in May).  We find that petitioner's deposits of $400 on January 6 and 18, 1995, are workers' compensation and therefore should be excluded from gross receipts.  See sec. 104(a)(1).  However, the $400 deposit on October 17, 1995, occurred after petitioner received his final workers' compensation settlement in August 1995 and is not workers' compensation.

2.  <u>Purported Loans to Petitioner</u>

Petitioner contends that an October 1995 deposit of $5,000 into his account was a loan from Mrs. Chappell that should be excluded from gross receipts.  We disagree.  Petitioner's testimony about the alleged loan was vague.  He did not state who lent the money to him.  Petitioner provided no evidence to support his claim.  Petitioner offered Exhibit 20-P to show that Mrs. Chappell had lent him money.  We did not admit Exhibit 20-P into evidence because petitioner had not exchanged it before

trial as required by our Standing Pretrial Order.  See Rules 104(c)(2), 131(b).  However, even if we had admitted it, the documents show only that Colonial Bank lent Mrs. Chappell $3,550, not that Mrs. Chappell lent petitioner $5,000.

Petitioner contends that, from May 1995 to December 1996, his father lent him, and he deposited in his account, a total of about $20,000 to help pay his daughter's medical bills.  He contends that this amount includes loans from his father of $500 a week from about October to December 1995.  Petitioner testified that his father endorsed various checks to petitioner from his father's accounting clients that petitioner deposited into his account beginning around May 1995 (when petitioner and Mrs. Chappell lost their jobs).  Petitioner testified that his father gave him client checks in the amounts of $1,050.46 and $500 in June, $110 and $350 in July, $977.74, $513.07, and $100 in September, and $610 and $280 in November 1995 that petitioner deposited into his account.  Petitioner's claim that his father signed over client checks to him is unconvincing, absent corroborating evidence such as testimony from his father or copies of the checks.

At trial, petitioner offered into evidence a purported promissory note he signed on the day of trial which states that petitioner agrees to pay $20,000 plus 5 percent simple interest by January 1, 2025.  We did not admit the purported note into

evidence. Even if we had, it would be unconvincing because the note does not state to whom petitioner is to repay the money or when the loan was made, and petitioner signed the note more than 4 years after his father allegedly lent him the money.

### 3. Petitioner's Business Gross Receipts

Petitioner contends that respondent's use of the bank deposits method overstated his income for 1994 and 1995. He contends that he correctly reported gross receipts from his tax preparation business of $38,658 on his 1995 return. He contends that Joseph Goggans (Goggans), doing business as Rapid Refund, issued a Form 1099-MISC, Miscellaneous Income, showing Goggans paid petitioner nonemployee compensation of $38,658.19 in 1995. At trial, petitioner offered into evidence Exhibit 16-P, the purported Form 1099-MISC from Goggans. We did not admit Exhibit 16-P into evidence because petitioner had not exchanged it before trial as required by our Standing Pretrial Order. We disagree that petitioner correctly reported his gross receipts for 1995. Although petitioner testified that he received about 10 checks totaling about $38,000 in 1995 from Goggans, he did not produce copies of any of those checks or show which deposits to his account in 1995 were from Goggans.

Petitioner contends that respondent overstated his gross receipts for December 1995 by using his bank records for September to November 1995. We disagree. Petitioner has not

suggested an alternative method to compute those gross receipts. We find reasonable respondent's method of reconstructing petitioner's December 1995 gross receipts.

We conclude that petitioner had unreported gross receipts in the amount determined by respondent for 1994. Petitioner's unreported gross receipts for 1995 are adjusted to account for respondent's concessions for 1995 and for reasons stated above at paragraph C-1.

D.    Miscellaneous Business Deductions

Petitioner deducted car and truck, commission, rent, utilities, and wage expenses for 1994 and 1995.

1.    Whether Petitioner Was Engaged in a Trade or Business Other Than the Tax Preparation Business

Petitioner deducted various expenses on his Schedules C for 1994 and 1995 for his tax preparation business, the so-called one-room schoolhouse, and for his lobbying activity.

Petitioner testified that in 1993 he started lobbying for several groups, such as the Citizens Against Government Waste and the Gun Owners of America, but it did not generate any income in 1993. He also said he earned $200 per year lobbying for the Gun Owners of America in 1994 and 1995. He also claimed he used the Lower Wetumpka Road house for a rebreeding activity, but he did not describe what the activity was.

Petitioner did not establish that the one-room schoolhouse, the lobbying activity, or the rebreeding activity was an activity

conducted with the primary purpose of making a profit.
Petitioner did not report on his 1994 or 1995 returns that he
received $200 annually from lobbying; even if he had, this small
amount of income would not establish that the lobbying activity
was a trade or business in 1994 or 1995.

2.  Car and Truck Expenses

A taxpayer may not deduct car and truck expenses unless he
or she substantiates by adequate records or sufficient evidence
corroborating the taxpayer's own statement the amount, time,
place, and business purpose of the car and truck use.  See sec.
274(d)(4).

Petitioner testified and contends that, in 1994, he used the
1994 Mazda truck solely for his tax preparation business, for
example, to haul desks and file cabinets between the office at
his home and the one-room schoolhouse, and that 50 percent of the
use of a 1993 Mazda 929 was for his lobbying business.

Petitioner's claim that he used the truck 100 percent for
business is implausible.  We believe he used the truck for
personal purposes because his wife drove the Mazda 929 and he
owned no other cars.  He offered no evidence of the number or
length of trips or the total mileage of the truck for 1994.
Petitioner claims that he used the Mazda 929 in his lobbying
activity; however, as discussed above, he has not shown that the
lobbying activity was a trade or business.  In view of the fact

that the car was used by his wife, we do not find that 50 percent of the use of the car was for petitioner's business for lobbying.

Petitioner did not have a log, records, or other corroboration of his testimony relating to his business use of the Mazda car and truck as required by section 274(d)(4). Petitioner did not establish the percentages of business use of the car and truck. See Rutz v. Commissioner, 66 T.C. 879, 883-886 (1976); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Thus, petitioner may not deduct car and truck expenses for 1994.

At trial, petitioner sought to raise for the first time the issue of his car and truck expenses for 1995. We ruled that it was then too late to raise that issue. Even if we had allowed petitioner to raise the issue, he did not show he was entitled to deduct car and truck expenses for 1995. At trial, he testified that he had a mileage log that showed that he used the truck 100 percent for business in 1995. However, he did not offer a copy of the log into evidence and thus had no records or other corroboration of his testimony relating to his business use of the Mazda car and truck for 1995.

### 3.   Commission and Wage Expenses

Petitioner deducted commission expenses of $7,980 for 1994 and $8,950 for 1995 and wage expenses of $9,500 for 1994 and $9,879 for 1995.  Respondent contends that petitioner may not

deduct commission expenses for 1994 and 1995 because he did not establish the business purpose of the payments, he did not issue Forms 1099 to the individuals he claims were independent contractors for the tax preparation business in 1994 and 1995, and his statement during the audit that he had only one independent contractor conflicts with his testimony at trial that he had 12-14 independent contractors in 1994 and 1995. We disagree.

At trial, petitioner credibly testified that he paid commissions to 12 to 14 independent contractors to work in his tax preparation business in 1994 and 1995. At trial, he introduced copies of canceled checks payable to the independent contractors and testified about the work they performed. We conclude that petitioner may deduct commission expenses of $7,980 for 1994 and $7,076 for 1995.[4]

Petitioner testified that he paid wages of $3,400 a year in 1994 and 1995 to each of his three children. Petitioner's children were ages 16, 12, and 8 in 1994. A taxpayer may deduct payments for compensation if the amount paid is reasonable in amount and for services actually rendered. See sec. 162(a)(1); Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1154

---

[4] The checks submitted at trial for 1994 and 1995 are substantially more than the amount of commissions petitioner deducted for those years. Petitioner did not explain the difference.

(1980); sec. 1.162-7(a), Income Tax Regs. Petitioner testified that the payments to his children were based on their needs, rather than the services they provided. Petitioner wrote a check to his wife for $3,300, dated February 6, 1994, and he testified that it was payment to Nicole for running the one-room schoolhouse and tutoring students there. He later testified that the $3,300 payment was for Nicole's braces. Petitioner did not describe what services Brooke and Tye performed for the tax preparation activity. Petitioner has not shown that the purported wages he paid his children were for services actually rendered or were reasonable in amount.

4.   Home Office Deduction

Section 280A(c)(1)(A)[5] allows a deduction for home office

---

[5]  Sec. 280A provides, in pertinent part:

SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.

     (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

          *    *    *    *    *    *    *

     (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--

          (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such
                                        (continued...)

expenses if the taxpayer exclusively and regularly uses the home office as the principal place of a trade or business or to meet with clients.

Petitioner contends that he may deduct his rent and utility expenses for home offices in the Lower Wetumpka Road and Creek Drive houses.  He contends that he showed that he met the requirements of section 280(c) for the Lower Wetumpka Road house by his testimony and his receipts for mortgage and utility payments.  He testified that he had a large office in the Lower Wetumpka road house that he used as a tax office and which the Freedom Quilting Bee used. He also had a second office in that home that he uses during tax season for tax preparation, and as a map room for the lobbying activity when it is not tax season;

---

[5](...continued)
item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--

    (A) [as] the principal place of business for any trade or business of the taxpayer,

    (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

    *   *   *   *   *   *   *

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

this office contains a television.  He testified that his employees also used the kitchen and bathroom.

Petitioner did not establish that he used any portion of the Lower Wetumpka Road house exclusively as the principal place of business for his tax return business or as a place to meet with clients.  He used the bathroom and kitchen for personal purposes. The television was in the second office.  We do not find that petitioner used these rooms exclusively for the tax preparation activity because the rooms were used for non-business purposes by the quilting group and the lobbying activity.

Petitioner contends that he is entitled to a home office deduction for rent he paid to his estranged wife to use an office at the Creek Drive house.  He testified that he used the following rooms in the Creek Drive house: A room for the one-room schoolhouse, the kitchen, bathroom (for clients), and the back of the house for a "rebreeding" program, not otherwise described in the record.

Petitioner did not establish that he used any part of the Creek Drive house as the principal place of business of a trade or business.  As discussed at paragraph D-1 above, he did not show that the activity conducted in the one-room schoolhouse was a trade or business.  He did not use the kitchen and bathroom exclusively for business, and he testified that his children did their schoolwork in the room he called the one-room schoolhouse.

We conclude that petitioner may not deduct home office expenses for the Lower Wetumpka Road or Creek Drive houses.

E.  The 10 Percent Tax for Early Distributions From a Retirement Plan

A 10-percent additional tax is imposed on early distributions from a qualified retirement plan which are includable in the recipient's gross income unless one of the exceptions listed in section 72(t)(2) applies.  See sec. 72(t)(1) and (2).  In 1995, petitioner received a taxable distribution of $3,759.27 from Fidelity Investments.  He did not attain age 59-1/2 in 1995.  Petitioner contends that he paid the additional tax with his 1995 return.  Petitioner reported the Fidelity Investments distribution as income on his 1995 return.  However, he did not pay a 10-percent additional tax for that distribution.  Thus, we sustain respondent's determination that petitioner is liable for a 10-percent additional tax on the distribution.

F.  Addition to Tax for Failure To Timely File Under Section 6651(a)(1)

Respondent determined and contends that petitioner is liable for the addition to tax under section 6651(a) for failure to timely file his income tax return for 1994.  A taxpayer is liable for an addition to tax of up to 25 percent for failure to timely file a Federal income tax return unless the failure was due to reasonable cause and not willful neglect.  See sec. 6651(a)(1).  The addition to tax is imposed on the net amount due.  See sec.

6651(b).  The taxpayer bears the burden of proving that the failure is due to reasonable cause and not willful neglect.  See United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioner filed his 1994 return 1 year late.  He contends that he is not liable for the addition to tax for failure to timely file because the amount of his withholdings for 1994 exceeded his tax liability, and he claims he does not owe any additional tax for that year.  We disagree.  Petitioner is liable for the addition to tax for failure to timely file the 1994 return because he is liable for additional tax for 1994 attributable to his change in filing status, the understatement of gross receipts from the tax preparation business, and the disallowance of various deductions.

G.   Accuracy-Related Penalty Under Section 6662(a)

Respondent contends that petitioner is liable for the accuracy-related penalty for negligence under section 6662 for 1994 and 1995.

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment attributable to negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1).

Petitioner contends that he is not liable for the negligence penalty because he does not owe any additional tax for 1994 and 1995.  We disagree, based on our holdings above.  We hold that he is liable for the negligence penalty for 1994 and 1995.

H.   Post-Trial Issues

1.   Tort Claims for Alleged Violations of Federal Acts

Petitioner asserted tort claims for alleged violations by former and current IRS officials of the Privacy Act of 1974, 5 U.S.C. sec. 552a (1994), and other purported Federal statutes for which he provided no citations.  This Court has only such jurisdiction as provided by Congress.  See sec. 7442; see also Estate of Meyer v. Commissioner, 84 T.C. 560, 562 (1985); Adams v. Commissioner, 72 T.C. 81, 84 (1979), affd. without published opinion 688 F.2d 815 (2d Cir. 1982).  Because petitioner has not established that we have jurisdiction to review these claims, we do not consider this issue.

2.   Amendment of Petition To Raise Post-Trial Issues

Petitioner sought to amend his petition to claim the deductibility of mortgage interest for the Creek Drive house for 1994 and 1995 and an unspecified amount of medical expenses for 1995.

Leave to amend a petition is freely granted when justice requires.  See Rule 41(a).  However, where no justification for delay exists or if the adverse party would be unfairly prejudiced or substantially inconvenienced by the granting of leave to amend, the request is denied.  See Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 46-47 (2d Cir. 1983); Shea v. Commissioner, T.C. Memo. 1991-518; Kloppenberg & Co. v. Commissioner, T.C.

Memo. 1986-325.  Petitioner sought to raise this issue late in the trial.  We ruled that the issue was not timely, and therefore we would not consider it.  We affirm that ruling now. See <u>Aero Rental v. Commissioner</u>, 64 T.C. 331, 338 (1975); <u>Palmer v. Commissioner</u>, 62 T.C. 684, 698 (1974), affd. 523 F.2d 1308 (8th Cir. 1975).

To reflect concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.