T.C. Summary Opinion 2002-130

UNITED STATES TAX COURT

GILFRED B. & PATRICIA S. SWARTZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10475-00S.                    Filed October 4, 2002.

<u>E. Martin Davidoff</u>, for petitioners.

<u>Rodney J. Bartlett</u> and <u>Timothy S. Sinnott</u>, for respondent.

DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined that petitioners are liable for additions to tax for taxable year 1983 under section 6653(a)(1) and (2) in the respective amounts of $198.20 and 50 percent of the interest due on a $3,964 deficiency. The issue for decision is whether petitioners are liable for these additions to tax.[1]

Background

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Eatontown, New Jersey, on the date the petition was filed in this case.

Petitioner husband (petitioner) has a bachelor's degree and a master's degree in electrical engineering and a doctorate in mathematics. In the year in issue, he was a full professor and the chairman of computer science and mathematics at Monmouth College. He has no academic background in finance or taxation and took only one course in economics as an undergraduate. Prior to the year in issue, petitioners had limited experience in making investments.

---

[1]In the petition, petitioners argued (1) that the deficiency upon which the additions to tax are based is incorrect, and (2) that petitioners "believe the statute of limitations has expired." Petitioners did not address these issues at trial or in their posttrial memorandum of authorities. We therefore consider them to have been abandoned, and we need not address them here.

Petitioner met Paul Trimboli at some time prior to 1983, when Mr. Trimboli began assisting petitioners with their taxes. Mr. Trimboli had been working at the public accounting firm Bugni, LaBanca & Paduano, doing primarily tax work and some auditing work. In 1983, he started a business with a partner as a certified public accountant and financial planner. By the end of 1983, in addition to a bachelor's degree in accounting, Mr. Trimboli had completed four of the five courses required to become a certified financial planner through the College of Financial Planning.

Mr. Trimboli learned of jojoba investments in early 1983, and he became especially interested in an investment known as Arid Land Research Partners ("Arid Land" or "the partnership"). In June 1983 and again in September 1983, Mr. Trimboli traveled to California to investigate the partnership as a potential investment opportunity. He traveled to Blythe, California, and to Bakersfield, California, where there were plantations on which jojoba was already being grown. He also visited a research facility located at the University of California at Riverside which was involved in the growing of jojoba. On these trips, Mr. Trimboli met with Robert Cole, who would become the general partner of the partnership, and Eugene Pace, who was the president of what was to become the purported research and development contractor to the partnership, U.S. Agri Research &

Development Corp. Mr. Trimboli had no experience in farming or in research and development ventures, and he was aware that Mr. Cole, the general partner, also had no experience with respect to jojoba. Prior to leaving Bugni, LaBanca & Paduano in 1983, Mr. Trimboli had no experience as a financial planner.

After Mr. Trimboli opened his own business in 1983 and began offering financial planning services, he and petitioner discussed various investment strategies. In December 1983, Mr. Trimboli advised petitioner that he should invest in Arid Land. As a part of their discussion regarding this investment opportunity, petitioner was told of certain tax benefits that the partnership hoped to gain for its investors, and petitioner was convinced there was nothing improper with the tax strategy.

A private placement memorandum for investments in the partnership, dated December 1, 1983, was distributed to petitioners. Prefatory material in the memorandum contained the following caveats:

> PROSPECTIVE INVESTORS ARE CAUTIONED NOT TO CONSTRUE THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS AS CONSTITUTING LEGAL OR TAX ADVICE. * * * INVESTORS ARE URGED TO CONSULT THEIR OWN COUNSEL AS TO ALL MATTERS CONCERNING THIS INVESTMENT.

> *　　*　　*　　*　　*　　*　　*

> NO REPRESENTATIONS OR WARRANTIES OF ANY KIND ARE INTENDED OR SHOULD BE INFERRED WITH RESPECT TO THE ECONOMIC RETURN OR TAX ADVANTAGES WHICH MAY ACCRUE TO THE INVESTORS IN THE UNITS.

EACH PURCHASER OF UNITS HEREIN SHOULD AND IS EXPECTED TO CONSULT WITH HIS OWN TAX ADVISOR AS TO THE TAX ASPECTS.

In a section entitled "Use of Proceeds", an estimation of various expenditures, the memorandum stated that 90.7 to 93.0 percent of the capital contributions from the partners would be allocated to the research and development contract (regardless of the total amount of the contributions).  The only other expenses were to be organizational costs, legal fees, and commissions.  One of the "risk factors" listed for the investment contained the following discussion:

> Federal Income Tax Consequences:  An investment in the units involves material tax risks, some of which are set forth below.  Each prospective investor is urged to consult his own tax advisor with respect to complex federal (as well as state and local) income tax consequences of such an investment.
>
>     *    *    *    *    *    *    *
>
> (c) Validity of Tax Deductions and Allocations.
>
>     The Partnership will claim all deductions for federal income tax purposes which it reasonably believes it is entitled to claim.  There can be no assurance that these deductions may not be contested or disallowed by the Service * * * .  Such areas of challenge may include * * * expenditures under the R & D Contract * * * .
>
>     *    *    *    *    *    *    *
>
>     The Service is presently vigorously auditing partnerships, scrutinizing in particular certain claimed tax deductions. * * * Counsel's opinion is rendered as of the date hereof based upon the representations of the General Partner * * * .  Counsel shall not review the Partnership's tax returns. * * *

(d) <u>Deductibility of Research or Experimental Expenditures.</u>

The General Partner anticipates that a substantial portion of the capital contributions of the Limited Partners to the Partnership will be used for research and experimental expenditures of the type generally covered by Sections 174 and 44F of the Code (particularly in recently issued IRS regulations issued thereunder). However, prospective investors should be aware that there is little published authority dealing with the specific types of expenditures which will qualify as research or experimental expenditures within the meaning of Section 174, and most of the expenditures contemplated by the Partnership have not been the subject of any prior cases or administrative determinations.

There are various theories under which such deductions might be disallowed or required to be deferred. * * * No ruling by the Service has been or will be sought regarding deductibility of the proposed expenditures under Section 174 of the Code.

A section entitled "Tax Aspects" contains the following information concerning a legal opinion from outside counsel obtained by the general partner:

The General Partner has received an opinion of counsel concerning certain of the tax aspects of this investment. The opinion * * * is available from the General Partner. Since the tax applications of an investment in the Partnership vary for each investor, neither the Partnership, the General Partner nor counsel assumes any responsibility for tax consequences of this transaction to an investor. * * * The respective investors are urged to consult their own tax advisers with respect to the tax implications of this investment. * * *

The opinion letter referenced in the private placement memorandum was one which purportedly had been written for Mr. Cole by outside counsel based on information provided by Mr. Cole. The letter, dated December 7, 1983, concludes by stating

general caveats and disclaimers along with the opinion that "it is more likely than not that a partner of Arid Land Research Partners, a Limited Partnership will prevail on the merits of each material tax issue presented herein." However, the conclusions regarding the issue of the section 174 deduction in particular were vague and nonconclusive in nature.

Finally, the investor subscription agreement accompanying the private placement memorandum required a subscriber upon purchase of an interest to aver that:

> He understands that an investment in the Partnership is speculative and involves a high degree of risk, there is no assurance as to the tax treatment of items of Partnership income, gain, loss, deductions of credit and it may not be possible for him to liquidate his investment in the Partnership.

In December 1983, petitioners purchased five units in Arid Land through Mr. Trimboli for a total of $5,500 in cash and a promissory note of $8,250. Petitioner was aware that Mr. Trimboli received a commission for his sale of the interests in Arid Land, but he did not know of any other relationship which he had with the partnership or its principals.

The commissions Mr. Trimboli received for selling interests in the partnership were similar to the commissions he received for selling other types of investments. In addition to the commissions, Mr. Trimboli was retained by Arid Land to prepare the 1983 tax return for the partnership. In preparing the partnership's return, Mr. Trimboli relied on financial

information provided by Mr. Cole and on the opinion letter given to Mr. Cole by outside counsel. The Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., sent to petitioners as partners in Arid Land reflected their share of the losses claimed by the partnership on the return prepared by Mr. Trimboli. Mr. Trimboli subsequently prepared petitioners' joint Federal income tax return for the taxable year 1983, claiming a deduction for a loss arising from the Arid Land investment in the amount of $12,407. At the time Mr. Trimboli prepared petitioners' return, petitioner was aware that Mr. Trimboli had obtained a tax opinion letter, and petitioner was convinced that there was nothing improper about the tax strategy.

As the result of partnership level proceedings concerning Arid Land Research Partners, this Court ultimately entered a decision disallowing in full the partnership's claimed ordinary loss of $463,688 for taxable year 1983. This decision was based upon a stipulation by the partnership and the Commissioner to be bound by the outcome of the case in which this Court rendered our opinion in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6. In that case, we found that the Utah Jojoba I Research partnership ("Utah I") was not entitled to a section 174(a) research or experimental expense deduction (or a section 162(a) trade or business expense deduction) because (a) Utah I did not directly or indirectly engage in research or experimentation, and

(b) the activities of Utah I did not constitute a trade or business, nor was there a realistic prospect of Utah I ever entering into a trade or business.  Id.

Following the entry of the decision concerning the partnership, respondent adjusted petitioners' return by disallowing their claimed share of the partnership loss, $12,407. In the statutory notice of deficiency which provides the basis for our jurisdiction in this case, respondent determined that petitioners are liable for additions to tax under section 6653(a)(1) and (2) in the respective amounts of $198.20 and 50 percent of the interest due on a $3,964 deficiency.

Discussion

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations.  Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations.  Negligence is defined to include "any failure to reasonably comply with the Tax Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances."  Merino v. Commissioner, 196 F.3d 147, 154 (3d

Cir. 1999) (quoting <u>Heasley v. Commissioner</u>, 902 F.2d 380, 383 (5th Cir. 1990)), affg. T.C. Memo. 1997-385.

Petitioners' primary argument is that they were not negligent because they relied on advice from Mr. Trimboli. Reasonable reliance on professional advice may be a defense to the negligence additions to tax. <u>United States v. Boyle</u>, 469 U.S. 241, 250-251 (1985); <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another issue, 501 U.S. 868 (1991). The advice must be from competent and independent parties, not from the promoters of the investment. <u>LaVerne v. Commissioner</u>, 94 T.C. 637, 652 (1990), affd. without published opinion sub nom. <u>Cowles v. Commissioner</u>, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 565 (1988).

Petitioners analogize their case to the case of <u>Anderson v. Commissioner</u>, 62 F.3d 1266, 1271 (10th Cir. 1995), affg. T.C. Memo. 1993-607. In <u>Anderson</u>, the taxpayer relied on both an investment adviser and an accountant in making his investment. The court found that reliance on the investment adviser, who received a commission for selling the investment to the taxpayer, was reasonable under the circumstances of the case. Cf., e.g., <u>Carmena v. Commissioner</u>, T.C. Memo. 2001-177 (financial adviser receiving commissions for sale of investments had inherent

conflict of interest in advice given to investors).  However, the court stressed that the investment adviser--an independent insurance agent and registered securities dealer--was a good friend of the taxpayer and was not affiliated with the investment the taxpayers entered into.  Anderson v. Commissioner, supra at 1271.

The present case is distinguishable from Anderson in two important respects.  First, in the case at hand, Mr. Trimboli was involved with principals of the investment prior to the creation of the partnership.  In particular, he was in contact with Mr. Cole, who was to become the general partner of Arid Land, and with Mr. Pace, who was to become the president of the research and development contractor.  Although petitioners argue that Mr. Trimboli was an outsider who coincidentally prepared the partnership's return, we find that Mr. Trimboli's relationship with the partnership and its principals makes him more than a disinterested commission-based salesman, as was the case in Anderson.  In light of his relationship to Arid Land, Mr. Trimboli cannot be considered to be an independent adviser.

Second, the investment adviser in Anderson was a good friend of the taxpayer.  Petitioners' relationship with Mr. Trimboli was purely professional and is not analogous to the close friendship between taxpayer and adviser in Anderson.  See also Dyckman v. Commissioner, T.C. Memo. 1999-79 (taxpayers reasonably relied on

an adviser who was a close personal friend); Reile v. Commissioner, T.C. Memo. 1992-488 (taxpayers reasonably relied on advice from an adviser who was an acquaintance and fellow "temple recommend holder"). Furthermore, petitioners' professional dealings with Mr. Trimboli were only in the context of an accountant-client relationship. Petitioners could not have had prior dealings with Mr. Trimboli as a financial planner because he had no experience in the field prior to 1983. Cf. Wright v. Commissioner, T.C. Memo. 1994-288 (taxpayers reasonably relied upon an individual who was recommended to them as a financial adviser, who had a strong presence in the community as such, and who misled the taxpayers concerning the propriety of an investment). Thus, the relationship between petitioners and Mr. Trimboli was not close enough or prolonged enough--either personally or professionally--to merit special consideration in the level of due care required by petitioners in this case.

With respect to his role as tax adviser, Mr. Trimboli largely relied on the opinion letter addressed to Arid Land's general partner, Mr. Cole. There is little to indicate that Mr. Trimboli researched the issues himself thoroughly enough to come to any independent conclusions concerning the propriety of the deductions. We find that Mr. Trimboli's reliance on the opinion letter further supports our conclusion that Mr. Trimboli did not render independent, objective advice concerning the propriety of

the partnership's position on tax issues.  Thus, we do not accept petitioners' assertion that Mr. Trimboli's reliance on the opinion letter should itself insulate petitioners from the negligence additions to tax.

Because Mr. Trimboli was not an independent adviser, petitioners' reliance on any advice from him was not reasonable. Bello v. Commissioner, T.C. Memo. 2001-56 (reliance on advice from an accountant concerning an investment was unreasonable where the accountant had been retained by the investment promoter); LaVerne v. Commissioner, supra; Rybak v. Commissioner, supra.

Petitioners point to the standard set forth by the Fifth Circuit Court of Appeals in Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408.  In Heasley, the court found that the taxpayers--who were moderate-income, blue-collar investors with little education or prior investment experience--were to be held to a lower standard of due care when evaluating whether they were negligent in making an investment. The court found that the taxpayers, the Heasleys, were not negligent because, among other reasons, they had relied on financial advisers.  Id. at 384.  The financial consultant who had sold the Heasleys the investment had referred them to an independent accountant for assistance in preparing their tax return with respect to the investment.  The accountant, in turn,

had reviewed the investment materials prior to completing the return. The court noted that "nothing in the record supports a finding that Smith [the accountant] did not independently assess the Heasleys' tax liability or that Danner [the financial consultant] influenced Smith's calculations." Id. at 384 n.9.

Heasley is not applicable to the case at hand. First, although with limited investment experience, petitioner is highly educated and was employed as a full professor at the time petitioners made their investment. Second, we have found petitioners' reliance on Mr. Trimboli to be unreasonable because he was not an independent adviser. Furthermore, petitioners relied solely on one individual, and that individual both sold them their investment and advised them as to its legal effect without independently researching the legal issues involved.

Finally, petitioners cite Hummer v. Commissioner, T.C. Memo. 1988-528, for the proposition that taxpayers cannot be negligent where the relevant legal issue was "not well settled". Petitioners, however, did not receive substantive advice concerning the deduction from anyone independent of the investment, nor did they conduct their own investigation into the propriety of the deduction. Indeed, there is no indication that petitioners ever were aware of the nature of the purportedly uncertain legal issues involved. Petitioners may not rely upon a "lack of warning" as a defense to negligence where no reasonable

investigation was ever made which would have allowed them to discover such a lack of warning, and where they were repeatedly warned of the relevant risks in the private placement memorandum. Christensen v. Commissioner, T.C. Memo. 2001-185; Robnett v. Commissioner, T.C. Memo. 2001-17.

The private placement memorandum contained numerous warnings regarding the tax risks involved with making an investment in Arid Land. Although the parties stipulated that petitioners received a copy of the private placement memorandum, petitioner could not recall having reviewed the memorandum prior to making the investment. In any case, the warnings were there and would have been evident if petitioners had exercised reasonable care and read the memorandum. After making their investment regardless of these risks, petitioners claimed a loss of $12,407 despite the fact that they had only recently invested cash of just $5,500.[2] This disproportionate and accelerated loss--along with the resulting substantial tax savings--should have been further warning to petitioners for the need to obtain outside,

---

[2]Petitioners argue that the instructions for Schedules K-1 provided by the Internal Revenue Service required them to report the loss. The instructions state that the individual taxpayer "must treat partnership items * * * consistent with the way the partnership treated the items on its filed return." The instructions have further provisions dealing with errors on Schedules K-1 as well as with the filing of statements to explain inconsistencies between the partnership's return and the taxpayer's return. We find to be unreasonable any belief by petitioners that they were required by law to mechanically deduct a loss which was improper.

independent advice regarding the propriety of the deduction. Despite these warnings, petitioners did not seek such advice or conduct any other type of inquiry into the propriety of the deduction.  We find that it was negligent for petitioners to have claimed this deduction under the circumstances of this case.  We sustain respondent's determination that petitioners are liable for the section 6653(a)(1) and (2) additions to tax for negligence.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.